David B. Owens, State Bar No. 275030
david@loevy.com
Anand Swaminathan*
Steve Art*
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, Illinois 60607
(312) 243-5900 (phone)
*motion for *pro hac vice forthcoming*

Jan Stiglitz, State Bar No. 103815
js@cwsl.edu
Law Office of Jan Stiglitz
14462 Garden Trail
San Diego, CA 92127
(619) 525-1697 (phone)
*Counsel for Plaintiff*

LOEVY & LOEVY
Attorneys at Law

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK HARRIS,<br>                           Plaintiff,<br><br>                 v.<br><br>CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, OFFICER SHARON KIM, DETECTIVE DENNIS PARKER, DEPUTY P. VALENCIA, OFFICER JOHN COUGHLIN, SGT. NICOLE AUFDEMBERG, OFFICER TERESA SPIRES, DETECTIVE LEONARD FELIX, UNKNOWN OFFICERS OF THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, UNKNOWN OFFICERS OF THE LOS ANGELES POLICE DEPARTMENT,<br>                           Defendants. | Case No. 2:21-7999<br><br><br>**COMPLAINT FOR DAMAGES & OTHER RELIEF**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

Plaintiff DERRICK HARRIS, by his undersigned attorneys, hereby complains against Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, OFFICER SHARON KIM, DETECTIVE DENNIS PARKER, DEPUTY P. VALENCIA, OFFICER JOHN COUGHLIN, SGT. NICOLE AUFDEMBERG, OFFICER TERESA SPIRES, DETECTIVE LEONARD FELIX, UNKNOWN OFFICERS OF THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, UNKNOWN OFFICERS OF THE LOS ANGELES POLICE DEPARTMENT, and states:

## JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and California law to redress the Defendants' tortious conduct and their violation of Plaintiff's rights secured by the U.S. Constitution.

2.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper under 28 U.S.C. § 1391(b). The events and omissions giving rise to this action occurred within this judicial district.

## INTRODUCTION

4.      In 2013, Plaintiff Derrick Harris was a 21-year-old father aiming to attend college and play collegiate basketball when the Police Officer Defendants wrongfully prosecuted and convicted him for the armed robbery of Curtis Blackwell—a crime he did not commit.

5.      The actual perpetrators of these crimes have admitted their involvement and confirmed Plaintiff's innocent.

6.      On October 6, 2020, some seven years after his arrest, Plaintiff's wrongful conviction was vacated and the charges dismissed.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

7.     But, it did not have to—and should not have been—this way. Defendants had ample evidence of Plaintiff's innocence, and even evidence pointing to the perpetrators of the crime, but decided to suppress and/or destroy that evidence and, instead, fabricate evidence against Plaintiff so they prosecute him anyway.

8.     Plaintiff now seeks justice for the harm the Defendants have caused him and redress for the loss of liberty and the terrible hardship he endured and continues to suffer as a result of the Defendants' misconduct. In addition, owing to the fact that the Police Officer Defendants were acting pursuant to the policies and practices of the City of Los Angeles as well as the County of Los Angeles, Plaintiff brings this action to seek not only redress for himself but to prevent similar constitutional harms from happening again in the future.

### PARTIES

9.     Plaintiff Derrick Harris is a 30-year-old man who spent seven years wrongly imprisoned for an armed robbery he did not commit.

10.     The investigation of the armed robbery of Curtis Blackwell was conducted jointly by the County of Los Angeles, via the Los Angeles County Sheriff's Department (LACSD), and the City of Los Angeles, via the Los Angeles Police Department (LAPD).

11.     Defendant Nicole Aufdemberg is a current or former Sergeant of the LAPD and employee of the City of Los Angeles, California. At the time of the incident, she worked as a Sergeant with the LAPD.

12.     Defendant Sharon Kim is a current or former officer of the LAPD and employee of the City of Los Angeles, California. At the time of the incident, Defendant Kim worked as a Community Safety Partnership (CSP) Police Officer and was assigned to the Nickerson Gardens Unit of LAPD's Southeast Division.

13.     Defendant Dennis Parker (#402902) is a current or former Detective of

LOEVY & LOEVY
Attorneys at Law

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

the LACSD and the County of Los Angeles, California. At the time of the incident, Defendant Parker worked as a full-time Deputy Sheriff and had served for over 20 years with LACSD.

14.     Defendant Teresa Spires is a current or former employee of the LAPD and employee of the City of Los Angeles, California. At the time of the incident, she worked as a Management Analyst assigned to the Legal Affairs Division of LAPD.

15.     Defendant John Coughlin is a current or former officer of the LAPD and employee of the City of Los Angeles, California. At the time of the incident, Defendant Coughlin worked as a CSP Police Officer and was assigned to LAPD's Southeast Division.

16.     Defendant Leonard Felix is a current or former employee of the LACSD and the County of Los Angeles, California. At the time of the incident, he served as a detective assigned to the High Tech Task Force.

17.     Defendant P. Valencia (#506140) is a current or former employee of the LACSD and the County of Los Angeles, California. At the time of the incident, Defendant Parker worked as a full-time Deputy Sheriff.

18.     At all times relevant to the events described in this complaint, currently unknown defendants were officers and supervisors in the Los Angeles Police Department (together the "Supervising City of Los Angeles Defendants"). The Supervising City of Los Angeles Defendants were responsible for overseeing the Blackwell armed robbery investigation, and in that capacity, they directed, reviewed, approved, and ratified decisions of the other Police Officer Defendants, as well as engaging in investigative activities themselves. The Supervising City of Los Angeles Defendants had knowledge of the investigative steps taken and evidence generated by other Police Officer Defendants. Currently unknown defendants also include officers in the Los Angeles Police Department who participated in investigations of the

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                      2:21-7999

LOEVY & LOEVY
Attorneys at Law

Blackwell armed robbery (together the "unknown investigating officers"). Defendant Unknown Officers of the Los Angeles Police Department participated in the misconduct alleged in this complaint.

19.     At all times relevant to the events described in this complaint, currently unknown defendants were officers and supervisors in the Los Angeles County Sheriff's Department responsible for investigating and overseeing the Blackwell armed robbery investigation, and in that capacity, they conducted, directed, reviewed, approved, and ratified decisions of the other Police Officer Defendants, along with engaging in investigative activities themselves. The currently known Los Angeles County Defendants had knowledge of the investigative steps taken and evidence generated by other Police Officer Defendants. Currently unknown defendants also include officers in the Los Angeles County Sheriff's Department who participated in investigations of the Blackwell armed robbery (together the "unknown investigating officers"). Defendant Unknown Officers of the Los Angeles County Sheriff's Department participated in the misconduct alleged in this complaint.

20.     The individual-named City of Los Angeles Defendants and the individual Los Angeles County Defendants are referred to collectively as the "Police Officer Defendants" in this complaint.

21.     The City of Los Angeles is or was the employer of the individual City of Los Angeles Defendants named above. In addition, the individual Los Angeles County Defendants acted at all times during the joint investigation of the Blackwell armed robbery as agents of the City of Los Angeles. The City of Los Angeles is responsible for indemnifying judgments against the individual City of Los Angeles Defendants. In addition, it is liable for all torts the Police Officer Defendants committed pursuant to the doctrine of *respondeat superior*. Finally, it is liable for violations of Plaintiff's rights caused by the unconstitutional policies and customs of

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

the Los Angeles Police Department, including actions of Individual City of Los Angeles Defendants and/or the actions of Individual Los Angeles County Defendants undertaken pursuant to those policies and customs during the Blackwell armed robbery investigation. The Supervising City of Los Angeles Defendants and others had final policymaking authority for the policies and customs of the Los Angeles Police Department.

22.     The County of Los Angeles is or was the employer of the individual Los Angeles County Defendants named above. In addition, the individual City of Los Angeles Defendants acted at all times during the joint investigation of the Blackwell armed robbery as agents of Los Angeles County. The County of Los Angeles is responsible for indemnifying judgments against the Individual Los Angeles County Defendants. In addition, it is liable for all torts the Police Officer Defendants committed pursuant to the doctrine of *respondeat superior*. Finally, it is liable for violations of Plaintiff's rights caused by the unconstitutional policies and customs of the Los Angeles County Sheriff's Department, including actions of Individual Los Angeles County Defendants and/or the actions of Individual City of Los Angeles Defendants undertaken pursuant to those policies and customs during the Blackwell armed robbery investigation. The Supervising Los Angeles County Defendants and others had final policymaking authority for the policies and customs of the Los Angeles County Sheriff's Department.

23.     Each Police Officer Defendant, known and unknown, acted under color of law and within the scope of their employment at all times relevant to this lawsuit. The Police Officer Defendants are sued in their individual capacities.

## FACTS

### The Armed Robbery of Curtis Blackwell

24.     On the afternoon of July 1, 2013, Curtis Blackwell drove his three-

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                2:21-7999

LOEVY & LOEVY
Attorneys at Law

wheeled motorbike to Hawkins House of Burgers ("Hawkins Burgers") in Los Angeles for lunch. He was wearing a gold chain around his neck.

25.     While waiting for his meal to be prepared, Blackwell sat outside on his motorbike.

26.     There were several other people at Hawkins Burgers at the time.

27.     Two of the men were together, and Blackwell spoke with them at or near Hawkins Burgers. One of these men, who ended up being Desmen Mixon (Mixon), was bare-chested.

28.     Blackwell asked Mixon about the "BH" tattoos on his chest. Blackwell also briefly spoke with the other man, who ended up being a person known as Lil Rock, before they left the area.

29.     Soon after, the Mixon and Lil Rock returned to Hawkins Burgers and closed in on either side of Blackwell.

30.     Lil Rock brandished a semi-automatic handgun, pointed it at Blackwell's neck and said "give me your chain."

31.     One of them then grabbed the chain from Blackwell's neck, and fled across the street.

32.     Blackwell chased them on foot until Lil Rock turned and pointed a gun at Blackwell, who then gave up his pursuit.

33.     Mixon and Lil Rock ran down Imperial Highway into Nickerson Gardens Housing Projects ("Nickerson Gardens").

34.     44.     Although Plaintiff was investigated, prosecuted, and wrongfully convicted of being one of the perpetrators, the actual perpetrators—Mixon and Lil Rock—were later identified, and both admitted their involvement in the offense and confirmed Plaintiff's innocence.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

**Plaintiff Derrick Harris**

35.    In July 2013, Plaintiff was a 21-year-old father, living in Los Angeles at Nickerson Gardens—a large public utility—with his girlfriend Keisha Brown, their young son, and Brown's daughter, who Plaintiff helped raise as his own. Plaintiff loves basketball, was an avid basketball player, and sought to pursue a collegiate basketball while advancing his education.

36.    Plaintiff was a well-respected and active member of his community's year-round basketball league, which was formed as a gang intervention and diversion effort for young men in the community. Plaintiff had been a steady member of the basketball league for several years and participated in basketball games in which LAPD officers participated. Plaintiff was also involved in community service and community building efforts in Nickerson Gardens including camping trips, water parks, jobs programs, and other activities to be a positive influence for the kids in the area.

37.    Plaintiff Derrick Harris had nothing to do with the armed robbery of Blackwell. He is completely innocent of that offense.

38.    Instead, the day Blackwell was robbed at Hawkins Burgers, Plaintiff was unwell; he was sick from an anniversary celebration with Keisha Brown the night before. Plaintiff was home with Brown nearly all day, leaving for only a few minutes to get items from a local convenience store.

**The Police Officer Defendants Investigate the Armed Robbery**

39.    Nickerson Gardens borders the jurisdictions of the LAPD and LACSD. As a result, these agencies had a practice of collaborating on investigations, calls for service, and other aspects of policing the area in and around Nickerson Gardens.

40.    The day after the crime, Blackwell went to the Los Angeles County Sheriff's Department's Century Station and reported the crime to Defendant Deputy

LOEVY & LOEVY
Attorneys at Law

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999

1   P. Valencia.

2       41.    Blackwell was only able to provide Deputy Valencia with a vague and

3   general description of Lil Rock. The limited description he was able to provide

4   included that the perpetrator was in his mid-thirties, had a receding hairline and a full

5   beard. Deputy Valencia wrote a report purporting to memorialize his conversation

6   with Blackwell.

7       42.    Blackwell's description obviously did not match Harris, who was just 21

8   years old.

9       43.     Defendant Parker was later assigned the case, and began to meet with

10  other Police Officer Defendants, including Defendant Kim and, upon information and

11  belief, Defendant Valencia to discuss possible suspects.

12      44.    Defendant Parker provided LAPD Sergeant Nicole Aufdemberg with a

13  copy of Valencia's report, and the Police Officer Defendants began to collaboratively

14  work together to see if they could link the robbery of Blackwell with a series of other

15  crimes occurring at or near Hawkins Burgers.

16      45.    None of that series of crimes involved Plaintiff, and nothing linked

17  Plaintiff to those crimes in any way whatsoever.

18          **The Police Officer Defendants Fabricate Evidence Against Plaintiff**

19      46.    Defendant Kim had been monitoring and patrolling Nickerson Gardens

20  since October 2011, and was familiar with many people in that community. Defendant

21  Kim knew Plaintiff, and knew he was not linked to any of the recent robberies or

22  other crimes at or near Hawkins Burgers.

23      47.    On or before July 17, 2013, Defendant Kim began to assist in the

24  investigation of the Blackwell armed robbery case and was briefed on the

25  investigation to date.

26      48.    From her extensive contacts with Plaintiff and others at and around

27

28

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                              2:21-7999

LOEVY & LOEVY
Attorneys at Law

Nickerson Gardens, Defendant Kim knew, but did not disclose, that Plaintiff was not the type of person who would have committed the armed robbery of Blackwell.

49. Like Defendant Kim, Defendant Coughlan was a Community Safety Partnership officer; he had some familiarity with Plaintiff and Nickerson Gardens; and he knew, but did not disclose, that Plaintiff was not the type of person who would have committed the robbery.

50. Nonetheless, and despite the availability of other evidence that Plaintiff was not involved, Defendant Kim met with the other Police Officer Defendants and claimed to them that Plaintiff was the likely perpetrator.

51. After this discussion with Defendant Kim, the Police Officer Defendants agreed to pin the armed robbery on Plaintiff.

52. On July 18, 2013, Defendant Parker created a photo array containing Plaintiff that was designed to get Blackwell to select Plaintiff.

53. The photographic lineup administration was highly suggestive. For example, some fillers were far older than Plaintiff (who was too young to match the description anyway); two of the suspects were bald (which was also inconsistent with the description of the perpetrator); and Plaintiff was the only person in the array who had a full beard and an apparently receding hairline.

54. In addition, the Police Officer Defendants administering the photographic lineup took steps to manipulate Blackwell to select Plaintiff. For example, after Blackwell expressed doubt in his ability to make identification or recall the description of the perpetrator, the Police Officer Defendants then reminded him of the description of the perpetrator that he had previously given to Defendant Valencia, knowing that Plaintiff was the only person in the photo array that matched that description.

55. Moreover, in a departure from established policing procedures and

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

LAPD written policy (though not typical practices among LAPD officers and L.A. County Sheriff's deputies), the Police Officer Defendants administering the lineup, including Defendant Parker, did not provide, or have Blackwell sign, the admonishments that were supposed to be given before the array in order to prevent improper suggestion or pressure, and to avoid false identifications. For this reason, established police practices at the time established the importance of giving witnesses specific cautionary instructions before administering an identification procedure, but Defendant Parker, and possibly other Police Officer Defendants administering the array, departed from them.

56.     Defendant Parker both constructed and administered the photo array in a manner that cued the witness toward Plaintiff and corrupted the process to produce a fabricated, unreliable misidentification.

57.     Blackwell viewed this unduly suggestive array on July 18, 2013, almost three full weeks after the incident. Upon viewing the array, based on Defendants' improper suggestion and contamination of the identification procedure, Blackwell misidentified Plaintiff as the perpetrator Lil Rock.

58.     The misidentification of Plaintiff—who had nothing to do with the crime at all, but happened to be the Police Officer Defendants' suspect—was not an accident, but instead the result of the actions of the Police Officer Defendants and misconduct that, upon information and belief, they still have not fully disclosed to this day.

59.     Based on that misidentification, Plaintiff was arrested in Nickerson Gardens by Defendant Coughlan and others on July 18, 2013, even though there was no probable cause to suspect him of the crime and the only evidence linking him to the Hawkins Burgers robbery of Blackwell was manufactured by Defendants.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

### Defendants Suppress Material Exculpatory Information, Including Evidence of Plaintiff's Innocence and Information that Pointed to the Actual Perpetrator

60.    As explained above, even before Blackwell's unreliable and corrupted identification, the Police Officer Defendants decided that Plaintiff was their suspect. After that, instead of using the available evidence to identify the real perpetrator, Defendants stopped looking for the perpetrator of the armed robbery and focused on developing evidence to implicate Plaintiff. In so doing, Defendants suppressed extensive evidence of Plaintiff's innocence.

61.    For example, Defendant Kim and Coughlan suppressed her belief that Plaintiff was likely *not* the perpetrator as well as information they received from others in the community that pointed away from Plaintiff. This information was not only exculpatory, but material to the credibility of Defendants Kim and Coughlan as a witness against Plaintiff.

62.    Moreover, the Police Officer Defendants failed to disclose much of the evidence that others were guilty of the crimes, and that Plaintiff was innocent from Plaintiff. This suppressed evidence was obviously exculpatory. For instance, the Police Officer Defendants suppressed exculpatory information Mixon told Defendant Parker during an interview on or around July 31, 2013—after they had arrested Plaintiff and had set upon him as the suspect who pointed a gun at Blackwell (when, in fact, that person was Lil Rock). Mixon admitted to being at Hawkins Burgers on the day of the crime, but Defendants failed to disclose that Mixon had not seen Plaintiff at Hawkins Burgers that day, and that Mixon had not seen or spent time with Plaintiff in the months before the crime.

63.    Mixon also implicated an alternative suspect. But, because that did not fit with their false narrative of the crime (which they had already set into action), the Police Officer Defendants did not disclose this exculpatory information, including information about the identity of the alternative suspect Mixon identified.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

64.     Additional evidence suppressed by the Police Officer Defendants includes phone records from Mixon, which were obtained from Defendant Leonard Felix who shared them with the other Police Officer Defendants. These records confirmed Mixon's involvement, and also implicated a co-perpetrator. They also showed that Plaintiff had no connection to Mixon, and in turn, to the crime. The entirety of these phone records were not disclosed to Plaintiff or his defense counsel and were, instead, suppressed by the Police Officer Defendants.

65.     Finally, Defendant Kim learned that "Lil Rock," not Plaintiff, was the person who had committed the crime with Mixon. Defendant Kim knew that Plaintiff was not "Lil Rock" and knew this to be so from her experience as a police officer and her interactions with Lil Rock, Plaintiff, and others. This information was not disclosed to Plaintiff before he went to trial and was convicted.

### The Police Officer Defendants Suppressed and/or Destroyed Exculpatory Surveillance Footage

66.     The perpetrators of the armed robbery ran from Hawkins House of Burgers into Nickerson Gardens immediately after the robbery.

67.     Nickerson Gardens is a very large public-housing complex in Los Angeles. Part of the reason that the LAPD and LACSD work corroboratively in policing Nickerson Gardens has not only to do with its size but also because there is a strong need to prevent crime in this area.

68.     As a result, there were surveillance cameras in and around the area. This includes surveillance cameras at Hawkins Burgers, which was under the jurisdiction of the Los Angeles Police Department, and numerous additional cameras throughout Nickerson Gardens. There were also cameras outside the Nickerson Gardens Gym, near where Plaintiff lived with his girlfriend. These surveillance cameras were under the jurisdiction of the Los Angeles Police Department.

LOEVY & LOEVY
Attorneys at Law

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                        2:21-7999

69.     This network of surveillance cameras would have captured—and upon information and belief *did* capture—footage of the real perpetrators of the crime, and also confirmed Plaintiff's innocence. The footage would have been—and upon information and belief actually *was*—obviously exculpatory.

70.     At some point, the Police Officer Defendants, including Defendants Parker and Kim specifically, reviewed surveillance footage from Hawkins and Nickerson Gardens from the day of the robbery.

71.     Instead of dropping their bogus case against Plaintiff, or even disclosing the footage itself to Plaintiff, his defense counsel, or prosecutors, the Police officer Defendants suppressed or destroyed the footage.

72.     The suppression and/or destruction of this evidence specifically involved Defendant Teresa Spires, Defendant Aufdemberg, and as-yet-unknown Defendants who were responsible for preserving and producing this sort of footage but did not do so. Defendant Aufdemberg was also a sergeant responsible for overseeing this footage and the responsible Police Officer Defendants but allowed this evidence to be suppressed and/or destroyed.

### As a Result of Defendants' Misconduct,
### Plaintiff Was Wrongfully Convicted and Imprisoned

73.     Plaintiff was arrested, charged, and detained awaiting trial from July 2013 to December 2013, as a result of the Police Officer Defendants fabrications and suppression of exculpatory evidence.

74.     No physical or documentary evidence linked Plaintiff to the armed robbery of Blackwell. And, as the Police Officer Defendants knew, at no point was there ever probable cause to believe Plaintiff committed the armed robbery of Blackwell. Any judicial determination of probable cause to suspect Plaintiff was the result of fabrications and/or the suppression of exculpatory material information by the Police Officer Defendants.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

75.    Nonetheless, on December 16, 2013, Plaintiff was convicted of armed robbery based solely on evidence manufactured by Defendants, despite evidence of his innocence, and as a result of Defendants' suppression and/or destruction of material evidence that, among other things, would have shown Plaintiff's innocence, undermined the credibility of the entire prosecution altogether, and that concerned alternative suspects.

76.    The Police Officer Defendants' suppression of materially impeaching and exculpatory information prejudiced Plaintiff. Without the cumulative benefit of this information, Plaintiff was tried for an armed robbery he did not commit and was convicted after an unfair trial in which material evidence was not disclosed by the Police Officer Defendants.

77.    Plaintiff was sentenced to 15 years in prison for a crime he did not commit.

78.    After the discovery of even more information indicating Plaintiff's innocence—including admissions from Mixon and Lil Rock confirming their involvement and Plaintiff's innocence—Plaintiff's wrongful conviction was vacated on October 6, 2020, and the charges were completely dismissed.

79.    The District Attorney's Office, through its conviction integrity unit, agreed that Plaintiff is innocent and joined in the dismissal of charges against Plaintiff.

80.    A California court also found Plaintiff to be factually innocent of the armed robbery of Curtis Blackwell.

**Plaintiff's Damages**

81.    Plaintiff's whole life was turned upside down without any warning. He was taken away from his family and friends. He missed out on the lives of his young

COMPLAINT FOR DAMAGES AND OTHER RELIEF                                    2:21-7999

son, and his girlfriend's daughter, whom he raised as his own daughter. He returned home to relationships changed or lost by years away.

82.     Ultimately, Plaintiff spent some 7 years detained for a crime he did not commit and had no part in. As a result, Plaintiff was robbed of a significant portion of his life as a young man, spending the majority of his 20's wrongfully incarcerated. He was deprived of all of the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

83.     Plaintiff lost the opportunity to grow and develop as a young man.

84.     In addition to causing Plaintiff the emotional trauma of wrongful imprisonment, loss of his liberty, and reputational harm, the Defendants' misconduct continues to cause Plaintiff physical and psychological pain and suffering, humiliation, fear, anxiety, depression, and despair, rage, and other physical and psychological harms.

## COUNT I
## 42 U.S.C. § 1983 – Violations of the Fourteenth Amendment, Due Process Against the Police Officer Defendants

87.     Plaintiff incorporates each paragraph of this complaint as if fully restated herein.

88.     As described, the Police Officer Defendants, while acting individually, jointly, and/or in conspiracy with each other, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to due process and his right to a fair trial.

89.     Defendants fabricated evidence, including manufacturing a misidentification of Plaintiff through unduly suggestive identification techniques as well as other documents. The corrupted misidentification was used as the sole trial evidence purporting to connect Plaintiff to the crime.

LOEVY & LOEVY
Attorneys at Law

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999

90.     Defendants deliberately withheld exculpatory evidence from Plaintiff, his attorneys, and prosecutors, among others, thereby misleading and misdirecting Plaintiff's criminal prosecution—including but not limited to evidence from Mixon that Plaintiff was not involved and information about a potential alternative suspect, information bearing on the credibility of important witnesses (Defendants themselves), and the entirety of exculpatory information from Mixon's phone.

91.     Defendants suppressed and/or destroyed exculpatory evidence from the surveillance cameras in and around Nickerson Gardens. The video footage had obvious and apparent exculpatory value, of which the Police Officer Defendants were aware. Though this surveillance footage was in the possession of the Los Angeles Police Department and all of the Police Officer Defendants, they suppressed and/or destroyed it anyway.

92.     The exculpatory value of the surveillance footage was apparent to the Defendants or, in the alternative, the evidence was potentially exculpatory, and the Defendants knew that. Nonetheless, the Defendants intentionally suppressed and/or destroyed the evidence. In the alternative, Defendants acted in bad faith in destroying the evidence.

93.     In addition, on information and belief, the Police Officer Defendants concealed and fabricated additional evidence that is not yet known to Plaintiff.

94.     The Police Officer Defendants' misconduct described in this count resulted in Plaintiff's unjust and wrongful criminal prosecution and conviction, deprived him of his liberty, and denied him his constitutional rights protected by the Fourteenth Amendment. Absent this misconduct, Plaintiff's prosecution could not and would not have been pursued.

95.     The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

others, and with total disregard for the truth and Plaintiff's clear innocence.

96.    Without Defendants' fabrication, suppression and/or destruction of evidence, Plaintiff would never have been arrested, charged, prosecuted, or convicted.

97.    As a result of the Police Officer Defendants' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

98.    The Police Officer Defendants' misconduct described in this count was undertaken pursuant to Los Angeles County's policies and City of Los Angeles's policies, which are more fully described below.

**COUNT II**
**42 U.S.C. § 1983 – Illegal Detention and Prosecution**
**Against the Police Officer Defendants**

99.    Plaintiff incorporates each paragraph of this complaint as if restated fully herein.

100.    In the manner described more fully above, the Police Officer Defendants, individually, jointly, and in conspiracy with each other, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment (as incorporated by the Fourteenth Amendment).

101.    In so doing, the Police Officer Defendants caused Plaintiff to be deprived of his liberty and detained without probable cause and subjected improperly to judicial proceedings for which there was no probable cause.

102.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally and with malice.

103.    As a result of the Police Officer Defendants' misconduct described in this

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                              2:21-7999

LOEVY & LOEVY
Attorneys at Law

Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

104.   The Police Officer Defendants' misconduct described in this count was undertaken pursuant to Los Angeles County's policies and City of Los Angeles's policies, which are more fully described below.

**COUNT III**
**42 U.S.C. § 1983 – Failure to Intervene**
**Against the Police Officer Defendants**

105.   Plaintiff incorporates each paragraph of this complaint as if restated fully herein.

106.   In the manner described above, during the constitutional violations described above, one or more of the Police Officer Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

107.   These Police Officer Defendants had a duty and reasonable opportunity to prevent this harm to Plaintiff, but they failed to do so.

108.   The misconduct described in this count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

109.   As a result of the Police Officer Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

110.   The Police Officer Defendants' misconduct described in this count was undertaken pursuant to Los Angeles County's policies and City of Los Angeles's

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

policies, which are more fully described below.

### COUNT IV
### 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights
### Against the Police Officer Defendants

111.   Plaintiff incorporates each paragraph of this complaint as if restated fully herein.

112.   The Police Officer Defendants reached an agreement among themselves to falsely implicate and prosecute Plaintiff for Blackwell's armed robbery, and thereby to deprive Plaintiff of his constitutional rights, as described above. This agreement was first reached before arresting Plaintiff, and it remained in place throughout all periods of his wrongful detention, prosecution, and incarceration.

113.   In addition, the Police Officer Defendants conspired before Plaintiff's conviction, and continued to conspire after his conviction, to deprive Plaintiff of exculpatory material to which he is entitled and that would have led to his earlier exoneration.

114.   In this manner, the Police Officer Defendants, acting in concert with each other and with other co-conspirators, known and unknown, conspired by concerted action to accomplish an unlawful purpose and/or a lawful purpose by unlawful means.

115.   In furtherance of the conspiracy, each co-conspirator committed overt acts and was an otherwise willful participant in joint activity.

116.   As a result of this illicit prior agreement, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

117.   The misconduct described in this count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

118.   The Police Officer Defendants' misconduct described in this count was

LOEVY & LOEVY
Attorneys at Law

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999

undertaken pursuant to Los Angeles County's policies and City of Los Angeles's

policies, which are more fully described below.

### COUNT V
### 42 U.S.C. § 1983 – Policy & Custom Claims
### Against Los Angeles County and City of Los Angeles

119.   Plaintiff incorporates each paragraph of this complaint as if fully restated

herein.

120.   When conducting the unduly suggestive and corruptive photo array,

Defendant Parker followed standard practice he had been taught by the Los Angeles

County Sheriff's Department. The LACSD failed to provide any written policies or

other procedural safeguard concerning the creation of photographic lineups including

the selection of filler photographs. These inadequate policies caused the violation of

Plaintiff's right here.

121.   Additional policies and customs of the Los Angeles County Sheriff's

Department and the Los Angeles Police Department were responsible for Defendants'

violations of Plaintiff's due process rights as well.

122.   Los Angeles County and City of Los Angeles employed the individual

Defendants, supervised them, and promulgated policy, including written policies and

unwritten customs, that caused the wrongful conviction of Plaintiff, as described

above.

123.   Plaintiff's injuries described in this complaint and the violations of his

constitutional rights discussed above were caused by the policies and customs of Los

Angeles County and City of Los Angeles, as well as by the actions of policy-making

officials for Los Angeles County and City of Los Angeles.

124.   At all times relevant to the events described in this complaint and for a

period of time before and after, Los Angeles County and City of Los Angeles failed to

promulgate proper or adequate rules, regulations, policies, and procedures governing:

LOEVY & LOEVY
Attorneys at Law

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                   2:21-7999

the conduct of photo array procedures; the collection, documentation, preservation, and disclosure of evidence, including material exculpatory evidence; writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and the maintenance of investigative files and disclosure of those files in criminal proceedings.

125.   In addition or alternatively, Los Angeles County and the City of Los Angeles failed to promulgate proper and adequate rules, regulations, policies, procedural safeguards, and procedures for the training and supervision of officers and agents of the Los Angeles County Sheriff's Department and the Los Angeles Police Department, with respect to the conduct of photo array procedures; the collection, documentation, preservation, and disclosure of evidence, including material exculpatory evidence; writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and the maintenance of investigative files and disclosure of those files in criminal proceedings.

126.   Officers and agents of Los Angeles County and the City of City of Los Angeles committed these failures to promulgate proper or adequate rules, regulations, policies, and procedures.

127.   Had officers and agents of the Los Angeles County and City of Los Angeles promulgated appropriate policies, then the violation of Plaintiff's constitutional rights would have been prevented.

128.   In addition, at all times relevant to the events described in this complaint and for a period of time before, Los Angeles County and City of Los Angeles had notice of a practice and custom by officers and agents of the Los Angeles County Sheriff's Department, Los Angeles County, the Los Angeles Police Department, and/or City of Los Angeles pursuant to which individuals suspected of criminal activity, like Plaintiff, were convicted based on identifications from unduly suggestive

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

photo arrays and/or due to convictions where material evidence was suppressed.

129.   In addition, at all times relevant to the events described in this complaint and for a period of time before, Los Angeles County and City of Los Angeles had notice of practices and customs of officers and agents of the Los Angeles County Sheriff's Department, Los Angeles County, the Los Angeles Police Department, and/or City of Los Angeles that included one or more of the following: (1) officers did not record or properly implement photo arrays; (2) officers failed to disclose material information; (3) officers failed to maintain and/or preserve evidence and/or destroyed evidence; and/or (4) officers pursued wrongful convictions through profoundly flawed investigations.

130.   These practices and customs, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of Los Angeles County and City of Los Angeles directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees on proper interrogation techniques and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses like those affecting Plaintiff.

131.   The above practices and customs, so well settled as to constitute *de facto* policies of Los Angeles County and/or City of Los Angeles, were able to exist and thrive, individually and/or together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

132.   That the policies, practices, and customs of Los Angeles County and City of Los Angeles cause grave harm like that experienced by Plaintiff is evident from the fact that these policies, practices, and customs have caused the wrongful convictions of other Californians, including but not limited to: (1) Roy Alvarez, who was exonerated after 7 years in prison for an armed robbery he did not commit, due to an

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

unduly suggestive identification procedure conducted by the Los Angeles Police Department; (2) Glenn Barner, who was wrongfully convicted of armed robbery based on the Los Angeles Police Department's faulty identification procedures; (3) Jason Kindle, whose conviction was reversed after the Los Angeles Police Department conducted unduly suggestive photo array to serve his conviction; (4) Deandre Howard, who was exonerated after ten years in prison for a murder conviction founded on a faulty photographic lineup conducted by the Los Angeles Police Department; (5) Luis Vargas, who was wrongfully convicted due to the suppression of exculpatory evidence and via faulty misidentifications by LAPD; and (7) Art Tobias, whose wrongful conviction was the result of, among other things the suppression of evidence of an alternative suspect whom LAPD detectives themselves believed were involved in the crime.

133.   As a consequence, the final policy makers for Los Angeles County and City of Los Angeles approved of, adopted, and therefore ratified the actions of the Individual Los Angeles County Defendants and the Individual City of Los Angeles Defendants, including their violations of Plaintiff's constitutional rights, making Los Angeles County and City of Los Angeles liable for this misconduct. In fact, on information and belief, rather than taking steps to correct the obvious faults and failures with the investigation, including through training or discipline, the final policy makers for Los Angeles County and City of Los Angeles further ratified the actions of the Police Officer Defendants by continuing to employ them, promote them, and approve of their work on the Blackwell armed robbery investigation that resulted in Plaintiff's wrongful conviction.

134.   Plaintiff's injuries and the constitutional violations he suffered were caused by officers, agents, and employees of Los Angeles County and City of Los Angeles, including but not limited to the Police Officer Defendants, who acted

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

2:21-7999

LOEVY & LOEVY
Attorneys at Law

pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this count.

### COUNT VI
**State Law Claim – Intentional Infliction of Emotional Distress**
**Against the Police Officer Defendants**

135.   Plaintiff incorporates each paragraph of this complaint as if restated fully herein.

136.   The Police Officer Defendants' actions and conduct as set forth above were extreme and outrageous. The Police Officer Defendants' actions were rooted in an abuse of power or authority, and were undertaken with intent to cause, or were in reckless disregard for the probability that they would cause Plaintiff severe emotional distress, as more fully alleged above.

137.   As an actual and proximate result of the Police Officer Defendants' actions, Plaintiff suffered and continues to suffer severe emotional distress.

138.   Plaintiff timely complied with California's claim presentment requirement and files this action within the time permitted for bringing such a claim after the claim was (erroneously) denied.

### COUNT VII
**State Law Claim – Civil Conspiracy**
**Against the Police Officer Defendants**

139.   Plaintiff incorporates each paragraph of this complaint as if restated fully herein.

140.   As described more fully above, the Police Officer Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to prosecute Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of his rights.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999

141.   In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was otherwise a willful participant in joint activity.

142.   The violations of California law described in this complaint, including but not limited to the Police Officer Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

143.   The misconduct described in this count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

144.   As a result of the Police Officer Defendants' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

145.   Plaintiff timely complied with California's claim presentment requirement and files this action within the time permitted for bringing such a claim after the claim was (erroneously) denied.

### COUNT VIII
### State Law Claim – Cal. Gov. Code § 815.2, *Respondeat Superior*
### Against Los Angeles County and City of Los Angeles

146.   Plaintiff incorporates each paragraph of this complaint as if restated fully herein.

147.   Plaintiff suffered the aforementioned injuries as a proximate result of the Police Officer Defendants' misconduct.

148.   During all relevant times, the Police Officer Defendants were employees and agents of Los Angeles County and the Los Angeles County Sheriff's Department and City of Los Angeles and the Los Angeles Police Department, acting within the scope of their employment or agency.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

149.   Defendants Los Angeles County and City of Los Angeles are liable as principal for all torts committed by their agents.

150.   Plaintiff timely complied with California's claim presentment requirement and files this action within the time permitted for bringing such a claim after the claim was (erroneously) denied.

**COUNT IX**
**State Law Claim – Cal. Civ. Code § 52.1**
**Against the Police Officer Defendants**

151.   Plaintiff incorporates each paragraph of this complaint as if restated fully herein.

152.   As described more fully above, the Police Officer Defendants intentionally interfered with Plaintiff's exercise or enjoyment of rights secured by the U.S. Constitution and the laws of California.

153.   The Police Officer Defendants' conduct in interfering with Plaintiff's rights was carried out by threats, intimidation, and/or other misconduct, as described above.

154.   As a result of the Police Officer Defendants' threats, intimidation, and/or misconduct, Plaintiff was deprived of his constitutional rights; wrongly prosecuted, detained, and imprisoned for seven years; and subjected to other grievous injuries and damages as set forth above.

155.   Plaintiff timely complied with California's claim presentment requirement and files this action within the time permitted for bringing such a claim after the claim was (erroneously) denied.

**COUNT X**
**State Law Claim – Cal. Gov. Code § 825, Indemnification**
**Against Los Angeles County and City of Los Angeles**

156.   Plaintiff incorporates each paragraph of this complaint as if restated fully herein.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999

LOEVY & LOEVY
Attorneys at Law

157. California law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

158. At all relevant times, the Police Officer Defendants were employees of the Los Angeles County Sheriff's Department and/or the Los Angeles Police Department who acted within the scope of their employment in committing the misconduct described herein.

159. Plaintiff timely complied with California's claim presentment requirement and files this action within the time permitted for bringing such a claim after the claim was (erroneously) denied.

WHEREFORE, Plaintiff DERRICK HARRIS, respectfully requests this Court enter a judgment in his favor and against Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, OFFICER SHARON KIM, DETECTIVE DENNIS PARKER, DEPUTY P. VALENCIA, OFFICER JOHN COUGHLIN, SGT. NICOLE AUFDEMBERG, OFFICER TERESA SPIRES, DETECTIVE LEONARD FELIX, UNKNOWN OFFICERS OF THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, UNKNOWN OFFICERS OF THE LOS ANGELES POLICE DEPARTMENT, awarding compensatory damages, attorneys' fees and costs against each defendant, and, because they acted willfully, wantonly, and/or maliciously, punitive damages against each of the individual defendants, and any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiff DERRICK HARRIS hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

**DATED: October 6, 2021**                     Respectfully submitted,

LOEVY & LOEVY
Attorneys at Law

- 28 -

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                     2:21-7999

1

2  **DERRICK HARRIS**

3  By:  s/ David B. Owens
4          One of His Attorneys

5  David B. Owens (david@loevy.com)
6  david@loevy.com
   Anand Swaminathan*
7  Steve Art*
8  LOEVY & LOEVY
   311 N. Aberdeen St.
9  Chicago, Illinois 60607
10 (312) 243-5900
   *motions for *pro hac vice* forthcoming
11
12 Jan Stiglitz (js@cwsl.edu)
13 Law Office of Jan Stiglitz
   14462 Garden Trail
14 San Diego, CA 92127
15 (619) 807-58900

16

17

18

19

20

21

22

23

24

25

26

27

28

LOEVY & LOEVY
Attorneys at Law

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**                    2:21-7999