David B. Owens, Cal. Bar No. 275030
david@loevy.com
*One of Plaintiff's Attorneys*
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK HARRIS<br><br>    Plaintiff,<br>v.<br><br>CITY OF LOS ANGELES, et al.<br><br>    Defendants. | Case No. 2:21-cv-7999-WLH (JPR)<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE TRIAL**<br><br>Final Pretrial Conference:<br><br>Date:    July 5, 2024<br>Time:   3:00 p.m.<br>Room:  9B<br><br>Trial Date: July 23, 2024 |

1

Plaintiff's Opposition to Motion to Bifurcate
2:21-cv-7999-WLH (JPR)

Comes Now Plaintiff DERRICK HARRIS, through counsel in opposition to Defendants' motion to bifurcate (Dkt. 133), and states:

## INTRODUCTION

Bifurcating the trial between damages and liability in this case is impossible, given overlapping issues and evidence applicable to liability and damages. Bifurcating the trial would prejudice Plaintiff, confuse the issues, be inefficient and burdensome, lead to additional disputes at trial, and burden third parties. Plaintiff's innocence and the damages he suffered as an innocent person are relevant to the substantive claims—including for intentional infliction of emotional distress and one method for proving fabrication of evidence—that are going to be tried. The motion should be denied.

## RELEVANT BACKGROUND

This is a wrongful conviction suit, and Plaintiff seeks damages not merely for being incarcerated but for being incarcerated for some seven years as an innocent person. Dkt. 1. The basic story of this case involves overlap between damages and liability. For example, as pointed out at summary judgment, Harris testified at his own trial, professing innocence. He was asked if he wanted to tell the jury anything and testified: "I'm not the type of person that will do this at all. this is not me, and this has been the scariest experience of my life. Just havin' to fight for my life for something that you didn't do is very scary." Dkt. 115-3 at 242. Defendant Kim sat by and watched Harris provide this testimony, knowing it resonated with her belief that Harris was not a violent person who would likely commit a violent crime like the Blackwell Robbery. That is testimony about both Plaintiff's damages, his innocence, and Kim's mental state and liability.

Plaintiff's innocence is relevant to his substantive claims as well. Among the claims expected to be tried are Plaintiff's California-law claim for the intentional infliction of emotional distress. Among other things, to prevail on this claim Plaintiff must prove that he has suffered "severe emotional distress." California Civil Jury Instructions § 1600 (2024). On this claim, the jury will be instructed that "[e]motional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame" and that *severe* emotional distress "is not mild or brief; it must be so substantial or long lasting that no reasonable person in a civilized society should be expected to bear it." *Id.* at § 1604.

In addition, Plaintiff advances a claim for the deliberate fabrication of evidence. Plaintiff's innocence is relevant here, too, in at least three ways. First, one method of proving fabrication is that Defendant Kim continued her investigation of Harris despite knowing or being deliberately indifferent to the fact that Harris was innocent. *See* NINTH CIRCUIT PATTERN INSTRUCTION No. 9.33; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

Second, there is also evidence in the case about Defendant Kim's doubts about Harris's innocence even after the conviction and her work in helping see Plaintiff exonerated. Dkt. 115-1 at 6. Defendants are likely to emphasize this evidence at trial, as they did at summary judgment. The flipside, though, is that Plaintiff will argue that Kim's efforts relate to her own consciousness of guilt and *mens rea*, on the due process claims beyond evidence of Plaintiff's damages. Part of deliberate indifference—both on a fabrication theory and a *Brady* theory if that ultimately proceeds to trial—involves showing the "conscious or reckless disregard of the consequences of one's acts or omissions." NINTH CIRCUIT PATTERN INSTRUCTION No. 9.33; *see also* NINTH CIRCUIT PATTERN INSTRUCTION No. 9.33A.

2

Plaintiff's Opposition to Motion to Bifurcate
2:21-cv-7999-WLH (JPR)

Testimony about Harris's innocence, and his damages that took place in front of Kim's very eyes, relates to her mental state on these claims. Third, evidence Kim knew or should have known Harris was innocent (and supports his fabrication claim) relates back to Plaintiff's IIED claim, which required him to prove Defendant Kim engaged in "outrageous" conduct. California Civil Jury Instructions § 1600 (2024).[1] Harris's known innocence and fabrication of evidence is part of what makes the conduct alleged in this case "outrageous" to sustain an IIED claim. *Cf. Hadley v. City of Anaheim,* 2020 WL 5604024, at *15 (C.D. Cal. Sept. 18, 2020) (denying summary judgment on IIED given evidence fabrication of claim); *Woods v. City of Reno*, 2020 WL 4194844, at *1-2, 16 (D. Nev. July 21, 2020) (evidence of fabrication supports IIED); *Lobato v. Las Vegas Metro. Police Dep't*, 2022 WL 4017055, at *7 (D. Nev. Sept. 1, 2022) (similar); *Fatai v. Ramos*, 2023 WL 2392707, at *18 (D. Haw. Mar. 7, 2023) (similar).

  Finally, Plaintiff's claims against Defendant Kim—including for conspiracy and failure to intervene—implicate the alleged misconduct of Los Angeles County Sheriff's Detective Dennis Parker, including the claim he fabricated evidence, obtained a misidentification, and worked with Kim to mischaracterize what took place when Harris was arrested for the Blackwell robbery. *See* Dkt. 115-1 at 2 n.1, 29-31; Dkt. 112-1 at 32-344.

**DISCUSSION**

**A. Governing Legal Standards**

---

[1] Given the fabrication and IIED issues are sufficient for present purposes, and given the Court has not issued it's summary judgment ruling, Plaintiff does not address the overlap between liability and damages on the *Brady* claim. But, should the Court order this claim to proceed, evidence of Plaintiff's innocence, and his damages as an innocent person, also related to the *Brady* claim. *See Rubalcava v. City of Los Angeles*, 2024 WL 2031641, at *1-*2 (C.D. Cal. May 6, 2024).

1    Rule 42 authorizes a court to order a separate trial of separate claims or
2 issues "for convenience, to avoid prejudice, or to expedite or economize." FED. R.
3 CIV. P. 42(b). Yet, as the Advisory Committee has explained, "separation of issues
4 for trial is not to be routinely ordered." FED. R. CIV. P. 42, 1996 Committee Note.
5    Consistent with that admonition, "bifurcation is the exception rather than the
6 rule of normal trial procedure within the Ninth Circuit." *Medtronic Minimed Inc. v.*
7 *Animas Corp.*, No. CV 12-04471 RSWL RZX, 2013 WL 3233341, at *1 (C.D. Cal.
8 June 25, 2013) (quoting *Clark v. I.R.S.*, 772 F.Supp.2d 1265, 1269 (D. Haw.2009)
9 (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th
10 Cir. 2004); *see also Est. of Hill by & through Grube v. NaphCare, Inc.*, No. 2:20-
11 CV-00410-MKD, 2022 WL 2177679, at *1 (E.D. Wash. June 14, 2022) (noting
12 that "bifurcation 'is the exception rather than the rule of normal trial procedure'
13 within the Ninth Circuit." (quoting *Benson Tower Condo. Owners Ass'n v.*
14 *Victaulic Co.*, 105 F. Supp. 3d 1184, 1208 (D. Or. 2015), aff'd, 702 F. App'x 537
15 (9th Cir. 2017) (declining to bifurcate liability from damages)).
16    As a result, the "'normal trial procedure' in the Ninth Circuit is to try
17 liability and damages together because 'the evidence usually overlaps
18 substantially.'" *Id.* (quoting *Firetrace USA, LLC v. Jesclard,* No. CV 07-02001-
19 PHX-ROS, 2011 WL 13183014, at *1 (D. Ariz. Feb. 15, 2011) (quoting *Hangarter*
20 *v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)).
21    In addition, as the moving party, Defendants bear the burden of proving
22 bifurcation is warranted. *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144
23 F.R.D. 99, 101 (N.D. Cal. 1992).
24    **B. The Motion To Bifurcate Should Be Denied.**
25

Plaintiff's Opposition to Motion to Bifurcate
2:21-cv-7999-WLH (JPR)

      For at least six reasons, the motion should be denied.

      **First**, the motion is built on the notion compensatory "damages are not intertwined with liability" and that testimony "and other evidence concerning damages including emotional and psychological damages, have no bearing on" liability. DKt. 133 at 4.

      The premise is simply wrong. For example, Plaintiff must prove *as an element* of his IIED claim that he suffered severe emotional distress, which is the exact same evidence he will point to as evidence of his damages on the other claims. In addition, Plaintiff's innocence—a quintessential component of his damages—is relevant to proving his fabrication of evidence claims. Bifurcation is thus improper. *See, e.g. Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 511 (9th Cir. 1989) (remanding and asking trial court to reconsider bifurcation ruling because "[i]n an intentional infliction of emotional distress claim, the issue of liability is intertwined with the issue of damages since the trier of fact can find liability only if it first finds that the plaintiff suffered severe emotional distress"). Put differently, where, as here, "liability and damages evidence may overlap, the proper course is to deny bifurcation." *Jones v. Nat'l R.R. Passenger Corp.*, 2018 WL 6606247, at *5 (N.D. Cal. Dec. 17, 2018) (citing *Aguirre v. California*, 2018 WL 1948702, at *5 (N.D. Cal. Apr. 25, 2018) (denying bifurcation where evidence of emotional distress may be relevant to both damages and liability)).

      The decision in *Rubalcava v. City of Los Angeles*, 2024 WL 2031641, at *8 (C.D. Cal. May 6, 2024), another wrongful conviction § 1983 suit, is persuasive. There, as here, the overlap between innocence and liability warrants denying a motion to bifurcate. *Id.* at *8. Another § 1983 wrongful conviction case involving a

5

Plaintiff's Opposition to Motion to Bifurcate
2:21-cv-7999-WLH (JPR)

misidentification, *Brady*, and fabrication claims, reached the same conclusion and declined to "deviate from the usual course of a single trial" where, as here, there was overlap between issues in the case on some of the evidence. *Gillispie v. City of Miami Twp.*, No. 3:13-CV-416, 2022 WL 16541259, at *4 (S.D. Ohio Oct. 28, 2022). *Gillispie* emphasized that even if there were "some examples of evidence that would fall only into one category" of damages versus liability, bifurcation was nonetheless inappropriate because there were some overlapping issues making it impossible to "draw clear lines that would distinguish between the evidence relevant to" just damages versus just liability. *Id.*

**Second**, as the Ninth Circuit recognized in *Miller*, bifurcation would cause juror confusion and uncertainty. 885 F.2d at 511. It is hard to imagine how Plaintiff could present sufficient evidence that he suffered emotional distress or that Defendant Kim knew of his innocence without submitting evidence of Plaintiff's emotional distress and innocence. Attempting to parse aspects of Plaintiff's claims in this confusing—if not impossible—manner should be rejected. *See, e.g.*, *Hunt v. Cnty. of Orange*, 2009 WL 10702539, at *9 (C.D. Cal. Oct. 7, 2009) (denying bifurcation where separating issues would be "overly confusing").

**Third,** given the overlap between damages and liability, Plaintiff would be prejudiced by bifurcation, at risk of denying his right to a fair trial. Where the "question of damages is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty which would amount to a denial of a fair trial." *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961). Harris cannot get a fair trial on his

IIED claim, or by presenting evidence Kim knew of his innocence and watched him suffer, in a bifurcated proceeding.

**Fourth**, bifurcation would disserve judicial economy because some witnesses would necessarily be required to testify twice. This includes not only parties—like Plaintiff and Defendant Kim—but third parties like Keisha Brown (Plaintiff's girlfriend at the time of his arrest and mother of his child), Plaintiff's criminal trial attorney (who would testify not only about criminal defense of plaintiff but the steps she took to secure his exoneration), community member Donny Joubert (who would testify both about Plaintiff's arrest and about Plaintiff's aspirations and life playing basketball), and other witnesses. Requiring "witnesses to testify on [the same] issue twice if the Court were to grant the motion to bifurcate" warrants denying the motion. *Rubalcava*, 2024 WL 2031641, at *8.

**Fifth**, bifurcation will not serve judicial economy because there are likely to be disputes about what constitutes "damages" testimony and what constitutes "liability" testimony, especially given the overlap of these issues. This, too, warrants denying the motion. *See, e.g.*, *Wiggins v. Penske Logistics LLC*, 2022 WL 1161628, at *2 (C.D. Cal. Mar. 17, 2022) ("Bifurcation would create difficult line-drawing questions as trial draws nearer and it becomes necessary to determine what evidence goes to which phase of the trial.").

In the end, summarizing the first five reasons, none of the interests that *could* warrant bifurcation are necessary here and this Court should follow myriad authorities denying bifurcation in circumstances like these. *See Est. of Hill v. NaphCare, Inc.,* 2022 WL 2177679, at *4 (E.D. Wash. June 14, 2022) ("The Court agrees that there is significant overlap between the liability and damages evidence

in this case. Accordingly, judicial economy is better served by a single trial. Even if the Court utilized a single jury for both phases of a bifurcated trial as NaphCare and Nurse Gubitz suggest, bifurcation would require jurors to twice observe the presentation of significant and identical portions of evidence—first in the liability phase and then again in the damages phase (as well as observe twice the opening statements and closing arguments). Duplicating proceedings in this fashion wastes party and judicial resources and would burden the witnesses to be called in this matter.").

**Sixth**, Defendant's claims about "sympathy" for Plaintiff are misplaced and have been routinely rejected. As *Rubalcava* noted, "[w]ith respect to Defendants' concern that jury sympathy will be elicited by Plaintiff's evidence regarding the hardships and effects of incarceration, district courts in the Ninth Circuit routinely address such concerns by appropriate jury instructions rather than bifurcation." 2024 WL 2031641, at *8 (citations omitted). Indeed, in a case with "tragic facts and a gory accident" where the plaintiff saw his own mother be killed, the Court concluded the evidence was "not so exceptionally inflammatory . . . as to justify preventing the jury from making a single determination regarding Defendants' liability and, if Defendants are liable, Plaintiff's damages." *Wiggins*, 2022 WL 1161628, at *2. Instead, it "is commonplace for juries to assess evidence of both liability and damages without bifurcation." *Id.* The same is true here.

## C. Whether Punitive Damages Are Available Is Irrelevant

The parties conferred about this motion. Plaintiff had a different understanding of what the defense intended to file. Namely, Plaintiff expected a

8

motion that sought merely to bifurcate *punitive* damages testimony from liability and compensatory damages. Plaintiff would not oppose that motion.

Regardless, Defendant Kim's references to punitive damages testimony is irrelevant and a distraction. For one, evidence about Kim's net worth is not inflammatory and could even draw sympathy for Kim, a public servant. In addition, Defendant Kim is unlikely to actually put at issue her ability to pay punitive damages because doing so will reveal to the jury that the City must pick up the tab for compensatory damages. *See Bell v. Clackamas Cty.*, 341 F.3d 858, 868 (9th Cir. 2003) ("Similarly, to the degree that the defendants seek reduction of punitive damages because of their inability to pay, any indemnification by the County for the payment of such damages may be taken into account."). Kim would be in no way prejudiced by this consequence of her litigation strategy.

Either way, whether this trial will involve questions about punitive damages involving Kim's net worth or personal background is speculative.

## CONCLUSION

Defendants have failed to meet their burden, and the motion to bifurcate should be denied.

Respectfully submitted,

**DERRICK HARRIS**

Dated: June 21, 2024        By: /s/ David B. Owens
                                 *One of Plaintiff's attorneys*

9

**Certificate of Compliance**

I, David B. Owens, an attorney hereby certify the foregoing is 2,498 words, in compliance with this Court's order setting forth the length for responses to motion *in limine*.

<u>**/s/ David B. Owens**</u>