1               UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3          HONORABLE WESLEY L. HSU, JUDGE PRESIDING

4    DEREK HARRIS,                    )
                                      )
5                                     )
                                      )
6                      Plaintiff,     )
                                      )
7                                     )
                                      )
8          Vs.                        )   No. CV21-07999-WLH
                                      )
9                                     )
                                      )
10   CITY OF LOS ANGELES, ET AL.,     )
                                      )
11                                    )
                                      )
12                     Defendants.    )
                                      )
13   _____)

14

15

16           REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                    *Motion Hearing*

18               LOS ANGELES, CALIFORNIA

19               FRIDAY, MAY 17, 2024

20

21

22

23           MIRIAM V. BAIRD, CSR 11893, CCRA
          OFFICIAL U.S. DISTRICT COURT REPORTER
24         411 WEST FOURTH STREET, SUITE 1-053
              SANTA ANA, CALIFORNIA 97201
25             VELIZBAIRDMIRIAM@GMAIL.COM

1                      **A P P E A R A N C E S**

2


3    **IN BEHALF OF THE PLAINTIFF,**        DAVID B. OWENS
     **DEREK HARRIS:**                       LOEVY AND LOEVY
4                                            CIVIL RIGHTS AND JUSTICE
                                             CLINIC UNIVERSITY OF
5                                            WASHINGTON LAW
                                             WILLIAM GATES HALL SUITE
6                                            265
                                             PO BOX 85110
7                                            SEATTLE, WA 98145-1110

8

9

10

11

12   **IN BEHALF OF THE DEFENDANT,**         BRIAN S. GINTER
     **CITY OF LOS ANGELES, ET AL.,:**       BURKE WILLIAMS AND SORENSEN
13                                           LLP
                                             444 SOUTH FLOWER STREET
14                                           SUITE 2400
                                             LOS ANGELES, CA 90071-2953

15

16

17

18

19

20

21

22

23

24

25

1        SANTA ANA, CALIFORNIA; FRIDAY, MAY 17, 2024; 11:01 A.M.

2                                    ---

3

4            THE CLERK:  Calling CV21-079999-WLH Derrick Harris

5    v. City of Angeles, et al.

6            Counsel, please state your appearance for the

7    record beginning with the plaintiff.

8            MR. OWNES:  Good morning, Your Honor.  David B.

9    Owens on behalf of Derrick Harris.

10           THE COURT:  Good morning.

11           MR. GINTER:  Good morning, Your Honor.  Brian

12   Ginter on behalf of the City of Los Angeles and Sharon Kim.

13           THE COURT:  Good morning to both of you.  The

14   matter is on calendar for the defendant's motion for summary

15   judgment -- well, the remaining defendants' motion for

16   summary judgment as to all claims.  I normally make it a

17   practice to disclose to the parties a tentative so that they

18   know what they're arguing from.  This was too meaty to have

19   the tentative ready.  I do have -- I do have thoughts.

20           So I thought what I would do is I would start the

21   hearing by telling you where I am on the various issues and

22   then let you argue.  It's not as good as having a tentative,

23   but at least you'll know what I'm thinking.

24           So with respect to the 1983 claims, my tentative is

25   to -- I've broken them up sort of by -- in my mind, sort of

1   categories.  The first category is fabrication of evidence.

2   In my view, the tentative is to deny the request for summary

3   judgment on the fabrication of evidence issue, because I

4   believe that there is a genuine issue of material fact as to

5   whether Detective Kim fabricated the evidence that is at

6   issue.  She says she didn't.  He says she did.  It seems to

7   me that is a quintessential question that the jury has to

8   answer and not me.

9           With respect to the second category, which is the

10  Brady question with respect to the video from Nickerson

11  Gardens, my tentative view is to grant that request for

12  summary judgment as to all of the Brady issues, because the

13  video was only potentially exculpatory.  There needed to be

14  bad faith shown.  I don't believe that was shown here.  So --

15  and I think that with respect to the -- Detective Kim's

16  personal opinions regarding the plaintiff, I don't know that

17  is -- I don't -- I'm not convinced that that is exculpatory

18  evidence within the meaning of Brady.  So on those bases, the

19  Brady claim would be denied.  With respect to the conspiracy

20  claim -- I'm sorry.  The motion summary judgment will be

21  granted with respect to the Brady claims under Section 1983.

22          Moving on to the conspiracy claim because I think

23  they -- it rises and falls with the fabrication of evidence

24  claim, the tentative is to deny summary judgment and its

25  conspiracy as well for the same reasons as the fabrication

1    claim.

2          With respect to Monell liability against the City,

3    there are three categories in my view of that claim.  The

4    first is to -- failure to adequately institute procedural

5    safeguards for the preservation of electronic evidence.  I

6    would grant with respect to that.  There hasn't been a

7    showing that that he was deprived of a constitutional right

8    in my view with respect to the failure to preserve.

9          With respect to the second question, which in my

10   view, is adequate training or adoption of adequate policies

11   concerning the production or suppression of material evidence

12   under Brady, for the same reason as on the underlying claim,

13   I would grant summary judgment with respect to that because

14   the first prong of that test is a constitutional violation

15   under Brady.

16         I would, however, deny summary judgment with

17   respect to the last category of Monell claims, which is the

18   custom and practice of claiming people's self-admitted gang

19   membership on field interview cards when they in fact did

20   not.  I think that is a question of fact as to whether or not

21   that was a practice that applied to him and deprived him of a

22   constitutional right.  So I would let that claim go forward

23   to the jury.

24         Then with respect to the other two causes of

25   action, I would be denying summary judgment, because, again,

1    I think that both the IIED claim and the civil conspiracy

2    under state law claim will rise and fall with the jury's

3    finding of whether or not Detective Kim actually fabricated

4    the evidence in the case.

5            With respect to -- so in some sense, there's a lot

6    of claims, but I actually think the question for the jury is

7    pretty narrow.  Did she do it or didn't she?  That's all they

8    have to answer, really.

9            With respect to qualified immunity, I think summary

10   judgment should be denied with respect to that, because if

11   she did in fact fabricate evidence, that's clearly something

12   that the officer -- any reasonable objective officer would

13   have known would have fallen outside of the -- I'm sorry, the

14   plaintiff's constitutional rights.  So at this time, I would

15   be denying qualified immunity.

16           So it is your motion, Mr. Ginter.  I think I've

17   covered everything that is pending.  So with that, would you

18   like to be heard?

19           MR. GINTER:  Yes, Your Honor.  Thank you very much

20   for your tentative, Your Honor.  You've obviously waded

21   through and I believe understood the issues.  Thank you for

22   that and thank you for your time.

23           Where I think your tentative goes awry is a

24   determination that because the plaintiff says X and Detective

25   Kim says Y about her opinion, that that is necessarily a

1    question of fact.

2            THE COURT:  No.  I -- no.  I think that that's not

3    what I was trying to say.  I will give you a specific

4    example.  She says that he admitted to her that he was a -- I

5    can't remember what the gang was, gang member.

6            MR. GINTER:  The Bounty Hunter Bloods.

7            THE COURT:  The Bounty Hunter Bloods, right.  He

8    says I was never a member of that.  I would not have admitted

9    that to her.  That seems like a question of fact.  No?  Am I

10   wrong about that?

11           MR. GINTER:  The -- the issue, though, is the type

12   of evidence that Detective Kim prepared and presented to the

13   prosecutors, which is her opinion.  It's her -- it's in a

14   writing.  It's her CV.  I think Your Honor is aware, but

15   you're shaking your head.

16           THE COURT:  Yes.

17           MR. GINTER:  That is the evidence.  It is -- it is

18   her opinion that he was a member of the gang.  She gives the

19   reasons for it, which have bases.  So it's not simply a

20   situation where a witness says or a detective says a witness

21   admitted or a person admitted to me that he was at a

22   particular location at a particular night, which would have

23   been incriminating.  The plaintiff says no, I never said

24   that.  This is opinion evidence, which is different.  She's

25   not reciting to prosecutors what a witness necessarily said

1    to her about an underlying crime.  It's about a gang

2    enhancement.

3            THE COURT:  Okay.  So she did not -- she did not --

4    maybe I'm confused about this fact.  She did not -- she was

5    not the initiator of any of the evidence that led to the

6    opinion?  In other words, she just looked at what other

7    officers did and then came to the conclusion that he was a

8    member of the gang?  Is that a correct description of what

9    happened?

10           MR. GINTER:  It's a bit of a blending, Your Honor,

11   because she has her own personal information of being

12   knowledgeable of the gang for years, which is also drawn upon

13   the experience and knowledge of her partner, who she

14   consulted with who had been there for decades before then,

15   Your Honor.  If I could digress for just a moment before I

16   forget to say it?

17           THE COURT:  Yes.

18           MR. GINTER:  The focus on whether or not the

19   plaintiff was a gang member is, to our understanding or our

20   mind, a little bit interesting, because even from the

21   plaintiff's defense attorney in the underlying criminal

22   trial, someone who championed his innocence from the

23   beginning, as she rightly should, in her own words in her own

24   deposition in this case, she said that the district attorney

25   basically took apart her client on the stand when he denied

1    being a member of that gang during the criminal trial.

2          It -- so the evidence, as I said, is odd to us,

3    because it is so overwhelming that even the -- the criminal

4    defense attorney for the plaintiff acknowledge that there was

5    plenty of evidence for the jury in the criminal case to reach

6    its conclusion that he was a member of that gang; that he

7    lied on that stand when he denied being a member of the gang,

8    and that is what, in Kim's words, really did him in during

9    the criminal trial, because the jury correctly understood

10   that there was overwhelming evidence that Mr. Harris was a

11   member of the gang.

12         THE COURT:  And -- but the conclusion I could draw

13   from that is that because he was lying about that, he was

14   lying about everything; therefore, the jury convicted him,

15   right?

16         MR. GINTER:  My point was only that there was

17   sufficient evidence for officer -- then officer, now

18   Detective Kim's opinion that he was a member of that gang.

19         THE COURT:  I see.  Okay.  I think I understand

20   that point.

21         MR. GINTER:  If I could, Your Honor, because I

22   located a very similar case just yesterday preparing for this

23   hearing.  I apologize for not giving it earlier.  Although

24   I'll give myself an excuse or an out and say it was not

25   published before we submitted our joint brief in this case.

 1  It was obviously available after our -- before our reply was

 2  filed.  In any event, I'll still give it to you.

 3           THE COURT:  Sure.

 4           MR. GINTER:  It is -- only a Westlaw cite is

 5  available.  It is a district court decision.

 6           THE COURT:  Okay.

 7           MR. GINTER:  It's 2024, WL 1336456.  The case name

 8  is Rubalcava versus the City of San Jose.  As I said, very

 9  similar case in which the district court while -- summary

10  judgment case -- while holding over the investigating

11  detectives for allegedly fabricating evidence, dismissed or

12  granted summary judgment --

13           THE COURT:  The expert?

14           MR. GINTER:  Yes, the expert who was an officer of

15  the same police department.

16           Part of the reason why I find it significant,

17  Your Honor, in -- it's a heading on page 14 of the

18  decision -- it says not baseless.  It talks about how the

19  moving defendant had provided sufficient information

20  supporting the opinion given by the gang expert.  And then

21  the Court said that that was sufficient to shift the burden

22  over to the plaintiff to attempt to show that there was no

23  basis for the opinion evidence that was given or that was the

24  subject of the motion.

25           THE COURT:  I see.  At the trial -- remind me

1  again, at the trial, Detective Kim did not testify as to --

2  as a percipient witness at all; is that correct?

3       MR. GINTER:  I hesitate only because I have not

4  memorized all of the transcripts.  She was a witness when she

5  performed the arrest.  So I don't know if that was a subject

6  of something that came up.  So she may have testified

7  precipitantly [sic] -- if that's a word -- as to those

8  events, but in terms of her opinion, part -- as I mentioned

9  before, you asked if her opinion is based on her own

10  knowledge or if it is just based on things that other people

11  told her.  As I said, it's both.

12       So she -- I know -- getting to your question,

13  Your Honor, she did testify about her own interaction with

14  Mr. Harris in which she understood he self-admitted to being

15  a gang member.  Although, that's not the only basis for her

16  statement in her report that he's a self-admitted gang

17  member.  She doesn't say in her report that he self-admitted

18  to me on X date.  She says he is a self-admitted gang member,

19  which is drawn on -- she explained it during her testimony at

20  the preliminary hearing, which is in evidence here, about how

21  her knowledge or understanding that he's a self-admitted gang

22  member is drawn from other officers, including her partner,

23  FI-cards that were available to her.  Of course, I think the

24  biggest piece of evidence is what we rely on heavily in our

25  papers, which is that the gang injunction was served on him.

1    He was identified as a gang member.

2            THE COURT:  Let's -- I'll just give you a

3    hypothetical just to make it easy.  So she says part of the

4    basis for my opinion that he's a member of the gang is that

5    he admitted it to me during a traffic stop in 2016.  He says,

6    I never would have admitted that because I'm not a member of

7    the gang and never was a member of that gang.  That's not

8    sufficient to create a question of fact to the jury that she

9    fabricated that evidence as part of her overall opinion?

10           MR. GINTER:  Not on the question of whether the

11    overall opinion has proper bases, Your Honor.  That's one

12    aspect of it.  If there were no bases, which I think is the

13    Lacy case that we explained in the joint brief, if there's no

14    basis for the opinion -- and, of course, the Court of Appeals

15    rightly determined -- I think was a medical examiner in that

16    case -- was not entitled to summary judgment.

17           THE COURT:  Well, I'm just going to try to make

18    this as difficult for you as possible.  So if an -- if an

19    expert has an opinion that has one true fact and then a whole

20    bunch of false facts that the expert has just made up for

21    that testimony, still summary judgment because there's a

22    basis for that opinion?

23           MR. GINTER:  If I said only a basis, I would have

24    misspoken, Your Honor.  I would say a sufficient basis, which

25    I believe is the language of the Rubalcava case.

1            THE COURT:  I see.

2            MR. GINTER:  That I mentioned.

3            The important part, I think, here is because this

4    evidence is going to the prosecutors.  It's the prosecutor

5    that makes the decision about whether to charge this offense

6    or pursue it or not, which is, of course, the underlying

7    basis for the civil claim.

8            It -- whether -- whether the -- the facts are

9    important enough to that prosecutor's charging decision is

10   what requires only the sufficient basis, because if there was

11   a sufficient basis, of course, the prosecutor rightly

12   charges.

13           THE COURT:  Okay.  So your position -- I just want

14   to make sure I understand.  Your position is the material

15   that Detective Kim presented to the prosecutor's office for

16   them to make the charging decision, had a sufficient basis,

17   including a sufficient basis of the fact that he was a gang

18   member even if I exclude as an unreliable anything that he

19   says he never told her or, for example, he disputes that he

20   was served with the preliminary injunction.  He just says

21   basically I was there.  So I was informed of it because the

22   other gang members that were there were served.  That's my

23   understanding of plaintiff's position, more or less.

24           MR. GINTER:  In the police station, yes.

25           THE COURT:  Yes, okay.  There was -- there was a

1    sufficient basis other than those two facts for her to reach

2    that conclusion and, therefore, summary judgment is

3    appropriate.

4            MR. GINTER:  Yes, Your Honor.  I could go further

5    and -- even though I don't really need to.  I would say

6    there's more than sufficient basis on the evidence here for

7    Detective Kim's opinion.

8            THE COURT:  Okay.  All right.  I think I understand

9    that argument.  Thank you.  I'll look at the Rubalcava case.

10           Anything else?

11           MR. GINTER:  Because, Your Honor, I -- I agree with

12   you that the other claims on which you would deny summary

13   judgment rise or fall with the what I'll call the principal

14   claim, the 1983 fabrication of evidence claim, I don't think

15   I have anything further at this time.

16           THE COURT:  What about your view about the Monell

17   claim that just goes to the practice of falsifying the FIs?

18   I mean --

19           MR. GINTER:  I don't believe there's evidence here

20   of a repeated practice, which is required under Monell.

21   There is just this claim.

22           THE COURT:  Didn't the LAPD itself create the

23   evidence that there was a pattern and practice?

24           MR. GINTER:  There was a subsequent investigation.

25   I don't believe the determinations were explained here in the

```
 1    deposition testimony that is before you.

 2                 THE COURT:  I see.

 3                 MR. GINTER:  But there was a subsequent years later

 4    investigation of conduct by officers at a completely separate

 5    department and division --

 6                 THE COURT:  I see.

 7                 MR. GINTER:  Yes.

 8                 THE COURT:  Okay.  So what you're saying is that

 9    the officers involved in this case, there's no -- there's no

10    evidence that the officers involved in this case were engaged

11    in a pattern and practice; therefore, this plaintiff can't

12    bring that case?

13                 MR. GINTER:  I don't believe to sustain a Monell

14    claim, the pattern and practice has to be narrowed to the

15    officers or individual defendants in the specific case.

16    There does need to be a showing of a repeated practice.

17                 THE COURT:  Okay.  But --

18                 MR. GINTER:  Overall in the department.

19                 THE COURT:  Okay.  All right.

20                 Presumably he would have to show that that pattern

21    and practice caused him some damage in order to bring that

22    claim?

23                 MR. GINTER:  Harris some damage, but yes, Your

24    Honor.  You said Kim.

25                 THE COURT:  Yes.
```

```
 1              MR. GINTER:  Yes, Your Honor.

 2              THE COURT:  I think I said, him.

 3              MR. GINTER:  Oh, pardon me.

 4              THE COURT:  Him, meaning the plaintiff.

 5              MR. GINTER:  Yes.

 6              THE COURT:  Thank you very much.  I understand.

 7              MR. GINTER:  Thank you, Your Honor.

 8              THE COURT:  Mr. Owens.

 9              MR. OWENS:  Thank you, Your Honor.  Mr. Harris is

10   here.  He was at the wrong federal courthouse.  Apologies --

11              THE COURT:  Not a problem.

12              MR. OWENS:  So I appreciate, like my friend, the

13   Court's tentative understanding.  So if I could do sort of

14   maybe three things.

15              THE COURT:  Sure.

16              MR. OWENS:  Start with responding to him about the

17   fabrication because it's on our mind.

18              THE COURT:  Yes.

19              MR. OWENS:  And then address the Brady and Monell

20   issues after that.

21              So as it relates first to the fabrication issue,

22   the Court's instinct and read of the record is correct that

23   the reports at issue that Detective Kim authored indicate

24   Mr. Harris was a gang member when he was not; that he

25   self-admitted.  There's other stuff here which the -- it's
```

1   much like the hypothetical, like Mr. Harris has tattoos that

2   say these things.  She's like, those means he's a gang

3   member.  There's no document that says that that has been

4   produced in this case.  It's just her saying those mean he's

5   a gang member.  That is something that is completely made up.

6   I tried to make that really clear.  I don't know where in the

7   world that came from.  Harris said that's not there.  The

8   City that he's not -- that's not what those mean.  These are

9   my friends.

10          So it not just sort of one of those like pie in the

11   sky, I think this.  It is what it means to fabricate.  So

12   fabrication does not involve only things just making things

13   up at of whole cloth.  So if you go back to the cases, we

14   talk -- you know, Kostanich, Spencer, Caldwell talk about

15   yes, making things up, which we say happened here, but also

16   deliberate mischaracterizations.  The idea -- the concept of

17   a mischaracterization is exactly that.  There is some basis

18   like an interview that happened with the witness.  Maybe

19   report some of the facts correctly, but you mischaracterize

20   other ones, right.  Mischaracterizations can be affirmative

21   or they can be even be made through omissions.

22          So that's what is in our authorities.  That is sort

23   of what, you know, the Court will understand, you know, this

24   happens every day where material omissions become misleading

25   under Franks and other cases.  So I think the idea of

1    fabrication proffered by the other side is a bit too narrow.

2    I agree that the IIED and civil and federal conspiracy issues

3    rise and fall on that.  So it is in fact a very narrow jury

4    question.  If the jury sides with Mr. Harris, then those

5    other claims would logically follow.  If they side with Kim,

6    those claims would rise and fall together.

7         So I think that -- obviously, I haven't read this

8    new case.  I'll look at it and --

9         THE COURT:  If you think you need to file something

10   supplemental, that's fine.  Just make sure that you do it

11   within a week so that we have it.

12        MR. OWENS:  Yes, Judge.

13        So turning now to sort of my uphill battle, as it

14   were, with respect to the Brady.  We'll just stick with Kim

15   before going to the video.  In this particular case, it's not

16   just like an expert's opinion report.  So this is a case

17   where Officer Kim testified three times in the criminal

18   proceedings, at the preliminary hearing and the State's case,

19   and then in rebuttal to Mr. Harris.  She was an important

20   witness here.

21        You're right that the evidence that would have --

22   that is in question about her knowledge that Mr. Harris was

23   not the type of person who would commit a heinous, violent

24   crime in broad daylight is not strictly exculpatory.  It is

25   materially impeaching.  Under Kyles against Whitley and under

1    Bagley, materially impeaching evidence has to be disclosed.

2           Evidence -- just to paraphrase Kyles -- that would

3    allow a criminal defendant to question the thoroughness or

4    even the bad or good faith of the investigation must be

5    disclosed.  So the way I imagine this playing out is you have

6    a criminal trial where Mr. -- Officer Kim has been sitting

7    there the whole time.  Says, this guy is a violent gang

8    member.  Blah, blah.  Well, actually, Officer Kim, isn't it

9    true that you know that he's not the kind of person who

10   could --

11          THE COURT:  Let me stop you for a second.  I admit

12   I don't have background in the D.A.'s office.  I was a

13   prosecutor for a long time.  The discovery obligations are --

14   generally speaking, they are things that exist, right.

15   There's a document or there's a statement in a report that is

16   exculpatory or materially -- or material to the impeachment

17   of a witness.  This is something that was in Detective Kim's

18   head.

19          MR. OWENS:  Yes.

20          THE COURT:  She had never told anyone that, as far

21   as we know, right?

22          MR. OWENS:  Correct.

23          THE COURT:  How did -- I'm not even convinced

24   sitting here that there was an obligation for her to write

25   that down and turn it over to the other side.  How could --

1   and my test would have to be that Officer Kim knew that she

2   needed to put that down in writing and turn it over to be

3   turned over to the other side.  And I don't know how -- that

4   seems like a big logical leap.

5              MR. OWENS:  Sure.  Let me try to bridge the gap

6   there, which is if you just start from the principle in

7   Carriger against Stewart, 132 F.3d 463.  That's a Ninth

8   Circuit en banc case from 1997 where the Ninth Circuit again

9   reemphasized this in Mellen against Winn in 2018 and says the

10  government's obligation is to disclose not just some evidence

11  that would bear on a witness's credibility, but all of it.

12  That duty is there -- there is an affirmative duty for

13  Officer Kim to report those things.  So she wrote a report

14  that says Mr. Harris is a violent member of this gang.  I

15  believe he committed this crime for the benefit of the gang,

16  but selectively omitted I personally don't think that he's

17  the type of person who would do a crime to benefit the gang

18  in this way.  I secretly omitted even while I was sitting

19  there that -- and testifying that that is not really the full

20  extent of my opinion.  It is --

21             THE COURT:  But do you have a case that -- where

22  the evidence is of that nature where it's just in the

23  witness's mind?  And here, it's definitely an opinion.

24             MR. OWENS:  Right.

25             THE COURT:  Right.  I mean, I definitely have had,

1    you know, defendants appear before me as a judge where I'm

2    like, it's really surprising and out of character that this

3    defendant committed this crime, but apparently he did because

4    he just pled to it.

5              So I mean, I'm finding it -- I mean, I think under

6    the Supreme Court's authority, there has to be a case that

7    tells her -- that predates the act that tells her that she

8    had to do this.

9              MR. OWENS:  Right.

10             THE COURT:  Do you have that case?

11             MR. OWENS:  So I think that -- I do think that this

12   is what Kyles is about where it is the -- because it -- so I

13   want to take the -- just take one step back.

14             THE COURT:  Okay.

15             MR. OWENS:  Kim is testifying as an expert.  That

16   is why she's providing opinion testimony, right.

17             THE COURT:  Yes.

18             MR. OWENS:  So there are things about her being a

19   precipitant [sic] witness where she did testify to this

20   alleged encounter, all of those things, right.  So she

21   knows -- this is actually why we put into the statement of

22   facts, which is rather long about, you know, Kim wrote this

23   report knowing it was going to it be used, knowing it was

24   going to be relied upon by the prosecutor because she's

25   acting as an expert in this case.

1          So her credibility is at issue because she's acting

2     as an expert, because what experts do is offer opinions.  So

3     it's not one of these like free-ranging things where oh, just

4     what is in your head possibly one day?  Because I understand

5     the Court's concern.  How could anybody expect to know that.

6     How -- but it -- the obligation comes once you write a

7     document that says, I believe Mr. Harris -- it is my proffer

8     as an expert opinion that X, Y, and Z is true.  If you're

9     like, oh, but I omitted A, B, and C, which undermined X, Y,

10    and Z, that's the thing that has to be disclosed.

11         So -- if Officer Kim just testifies in this case, I

12    arrested -- I talked to Parker; here's what happened.  I

13    arrested Harris and took him to the station and then walks

14    away, I -- it's very, very different.  I agree.

15         But in this case -- and the reason the gang

16    evidence is so significant is because there's a gang charge.

17         THE COURT:  No, no.  I -- I don't dispute that.

18    Clearly, that was an important part of the case.  It was an

19    important part to the prosecutor.  There's no question about

20    that.  I guess I'm going to go back to the principle.

21    Generally speaking, what that -- what the impeachment

22    disclosure obligation is, I'm the expert.  I'm testifying and

23    I say X.  A year ago I wrote a document that said not X.

24    That document has to be disclosed so that the defense can

25    cross-examine with it.

1      I mean, here there's no document.  There's a

2  thought in Officer Kim's head.  Gosh, I really don't think

3  that this plaintiff is the kind of guy who would commit this

4  crime.  I -- I mean, that seems to be very, very different

5  than the paradigm.

6           MR. OWENS:  Sure.  Let me just point back to our --

7  I did spend some time on this and reminded myself of my

8  thinking here.  There was this, you know, there's this

9  Paradis v. Arave, A-r-a-v-e, Ninth Circuit decision from

10  2001, which is obviously before the events here about the

11  information suppressed to -- that would have impeached an

12  expert opinion.  As Kyles talks about, the -- the work of

13  police work is the probative force of evidence depends upon

14  the circumstances in which it was obtained, and those

15  circumstances raise the possibility of fraud.  Indications of

16  conscientious police work will enhance probative force.

17  Slovenly work will -- the probative force of evidence depends

18  upon the circumstances in which it was obtained.  Those

19  circumstances raise the possibility of fraud.  Indications of

20  consciousness police work will enhance probative force and

21  slovenly work will diminish it.  That's from Kyles.  There

22  are other cases we cited about this.

23           THE COURT:  But what was the specific thing in

24  Paradis that was not disclosed?

25           MR. OWENS:  Oh, it is -- it has been --

1        THE COURT:  I mean, to me that makes a big

2   difference.

3        MR. OWENS:  I understand.

4        THE COURT:  Is it an undisclosed opinion that was

5   in the expert's head or is -- was there a document that the

6   prosecution failed to turn over?

7        MR. OWENS:  I don't -- I can't recall.  I will

8   double-check because the -- the way that I think about it is

9   sort of -- I have never been a prosecutor, so you will have

10  to forgive me.

11       THE COURT:  That's all right.

12       MR. OWENS:  Is that, you know, when I impeach

13  police officers in my criminal defense work, if I would

14  have -- if I would have looked at Kim's CV in this case and

15  said, oh, it's my expert opinion that despite all of my

16  observations of Harris and my numerous interactions of him as

17  a non-violent person who I don't think would commit this

18  crime, that he did this for the defense, I would have -- I

19  would have been let's talk about that part of your expert

20  report.  Let's talk about -- I -- I would never have known

21  that there because it was undisclosed.

22       THE COURT:  Of course.

23       MR. OWENS:  That is the thing that -- that would

24  have allowed me to make -- make -- the strategy changes then

25  because it's like how do I treat Kim as a witness?  Like,

let's put this gang stuff to the side. You don't think he

committed this underlying crime. So we can ignore all of

that. It would have totally altered the way in which I would

have operated as a defense attorney.

It is only -- the crucial thing here is that her

credibility is at issue based upon the things that she wrote

saying that Harris did these things.

THE COURT: Can I add a comment that I have some

philosophical discomfort with the incentive structure that I

would be imposing here, because if I find that she might be

liable because she later voiced the fact that she did not

think that he could do it, the incentive then is to never

ever have a police officer voice that opinion because it

could jeopardize the prosecution in the future. That's seems

bad.

MR. OWENS: I agree, but I don't think that -- but

the incentive structure is imposed by the constitution which

requires the government to turn over all material evidence in

advance, right. So the -- one thing that will come up at the

trial in this case is the -- is that I anticipate that

Officer Kim -- and the defense will argue, look, Officer Kim

helped exonerate Mr. Harris. Why is he mad at her?

THE COURT: Yes.

MR. OWENS: That is going to be part of the case.

I'll be like, we should have a society in which people would

1   admit when they make mistakes.  She made a mistake.  That

2   caused a tragedy here.  It doesn't absolve the mistake.  It

3   doesn't erase it.

4         So you're right that that I think it would be

5   better from an incentive structure if folks admitted their

6   mistakes, but they should admit them on the front end

7   already, right.  The incentive structure that you're

8   concerned about, you know, we have these constitutional rules

9   that apparently are not sufficient to trigger their

10   disclosure then.  I'm glad that, you know, Officer Kim felt

11   guilt and felt concern about this.  That is the type of thing

12   that would have allowed her -- the defense attorney to treat

13   her as a different witness at the time.

14         So I do think that -- at the end of the day, the

15   reason that we put in that evidence in our statement of facts

16   here is because the Ninth Circuit does have a question of

17   deliberate indifference and recklessness with respect to the

18   suppression of Brady material.

19         The fact that Officer Kim -- there's a dispute of

20   fact about this about when her concerns arose.  It's our read

21   of the evidence that she knew during the trial, oh, man, this

22   is kind of sketchy.  She had those concerns, and I think

23   their concern -- their position would be once he was

24   convicted, then she suddenly became concerned.  That's a mens

25   rea issue.

1           The reason that evidence matters here I think

2   actually goes to whether or not a reasonable officer in

3   that -- in that -- in that situation would have -- would have

4   or should have known that this is something that they should

5   have disclosed because at the time -- now Detective Kim is

6   testifying again and again in the criminal proceedings.  She

7   knows that there is a major dispute about whether or not

8   Mr. Harris is a gang member.  Her -- the extent of her expert

9   opinions.

10          So I'll just say as one thing to pivot from this

11  is -- is that my friend's suggestion that the -- there was

12  other officers in CPD or -- I'm sorry.  We're in Los Angeles.

13  My apologies.  There were other officers -- other FI cards.

14  There were other things that were introduced against

15  Mr. Harris as part of the FI cards.  That is part of our

16  claim that you don't get that kind of thing.  So at one point

17  in the trial, the prosecutor says, do you remember Officer

18  Garcia?  There's other random people whose FI cards are

19  mentioned.  The practice is widespread.  It is sufficient.

20          I will say that the City bears the burden at

21  summary judgment of showing that there is no potential for

22  material -- we asked for discovery -- more discovery about

23  the exact things that the City of L.A. admitted and didn't

24  about getting kicked out of all Cal Gangs.  We didn't resolve

25  that.  We didn't get everything we wanted.  We did do a

 1    30(b)(6) dep which I do think raises triable issue of fact

 2    here about this pervasive practice of people self-admitting

 3    when they did not.

 4           As it relates to the other Brady issue -- I

 5    appreciate the Court's tentative thoughts about the video.

 6    So let me just say, I understand the -- the distinction of

 7    like, if it's only potentially exculpatory, you have to show

 8    bad faith.  If it's obviously exculpatory, then there's a

 9    lower standard that requires -- like applying Youngblood and

10    all of that.  That's at least how I understood what the Court

11    was thinking.

12           THE COURT:  Yes.

13           MR. OWENS:  And perhaps, you know, this is an

14    evidentiary failure on my behalf, but when I look at the maps

15    of the -- where the cameras were located and the structure of

16    the Gardens itself, and maybe it's something in my head I

17    have from being there, is that there's no way that those

18    folks ran into the Gardens and then just vanished, right.

19    They didn't just go nowhere.  There are cameras all over the

20    place, right.

21           So especially if there was an idea that it was from

22    where Mr. Harris lived at the time from Hawkins.  It's a long

23    ways.  Like I drove my car from Hawkins to his old -- it is I

24    think almost three quarters of a mile.  If you were running

25    from point A to point B, you would have necessarily passed

1    all sorts of cameras.  The route that Mr. Harris took that

2    day, I -- we do not have direct evidence of what was on the

3    video, but we have his testimony, his -- Ms. Brown's

4    testimony about what they did that day and where they were.

5    We have the maps that show the locations of the cameras.  I

6    think a reasonable jury could say actually, yeah, I do think

7    that there is something that exists there.

8           I'll just be frank with the Court, I do think this

9    claim is a stronger claim with respect to the City than it is

10   with respect to Officer Kim specifically.  She's in a little

11   bit of a weird place when it comes to mens rea here given

12   that it was Parker's investigation.  And, you know,

13   there's -- you know, our expert wants to be like no, Parker

14   should have got the videotape, right, but this is the type of

15   situation where it's like the institutional failure is

16   greater than the individual because, you know, the City has

17   no mechanism for preserving this type of evidence.  Every

18   officer, Kim, Oftenburg, Parker were all at the outset like

19   obviously, we got to get the video.  It's part of

20   Mr. Harris's interrogation.  It is part of the conversation

21   he has when he's arrested.  Oh, are you saying I did

22   something there?  There should be video that shows that.

23   That's what he testified was there.  Now why doesn't that

24   video exist?

25           Well, the City --

1          THE COURT:  More than 30 days.

2          MR. OWENS:  Or 45 in this case, right.  It could

3   be -- even the City's own discovery subpoena response people

4   don't know the retention period.  There is no retention

5   period.  There's been a police report made of an incident

6   that took place at Nickerson Gardens.  There is no automatic

7   discovery.  There is no cloud.  There is no way of getting

8   this information back.

9          So I do think a reasonable jury could conclude --

10  now they're not required to.  I understand that.  We could

11  very well lose this claim, but I think in terms of our burden

12  at this point, could a reasonable jury look at the maps, hear

13  Mr. Harris's testimony, hear an expert say that they should

14  have preserved this testimony, police officers obviously

15  would have done that, and conclude that it was more than

16  potentially exculpatory?  Yes.  Are they required to do so?

17  I don't think so.

18          I think that addresses this issue with respect

19  to why the Monell claim here -- it is one of these types of

20  it claims where under Farrelly and the other Ninth Circuit

21  cases that we've cited where even if Officer Kim herself is

22  not liable or isn't the perfect defendant, it is the -- it is

23  the City's background failure to implement procedural

24  safeguards for the production or the preservation of this

25  type of evidence that is really what caused -- what would --

1    you know, what a reasonable jury could find would be the

2    moving force as it relates to that.

3         Then on the final thing I know the Court issued

4    which we kind of went back and forth about as it relates to

5    Brady in training, when I asked Officer Kim in her deposition

6    about whether or not she had heard of Brady when she was a

7    patrol officer.  She was like, what; don't know about it.

8    There is a failure to train here.  It's inadequate.  There's

9    no documents.  I just want to address one thing that I

10   think -- this is not one of those things where you need a

11   series of repeated incidents.  Under Bryan County and the

12   length of time Brady has been established, it should have

13   been obvious if you don't teach patrol officers what their

14   obligations are, that it's going to get there.

15        Now, I understand the Court has their own questions

16   about whether or not it would have been obvious to Officer

17   Kim that she should have to disclose this thing in her head.

18   The answer is yes, because it covers her credibility once she

19   becomes an expert witness and not just a facts witness.

20        THE COURT:  The test is not what you think.  The

21   test is what the officer knew at the time that she did the

22   alleged act.

23        MR. OWENS:  Or should have known.

24        THE COURT:  So -- let's do it this way:  You're

25   going file something supplemental on Rubalcava --

```
 1              MR. OWENS:  Yes.

 2              THE COURT:  -- I assume.

 3          When you do that, I challenge you to give me one

 4     case where the thing at issue that the -- the undisclosed

 5     thing at issue was something as intangible as an opinion.

 6              MR. OWENS:  Okay.  I'm aware -- the reason I was

 7     hesitating earlier is I'm -- I've litigated a lot in other

 8     Circuits too --

 9              THE COURT:  Sure.

10              MR. OWENS:  I have three cases in my head.  I want

11     to find you one from the Ninth Circuit as well.

12              THE COURT:  It doesn't have to be from the Ninth

13     Circuit.  I just -- I need to understand this principle.

14              MR. OWENS:  Yes.

15              THE COURT:  Okay.  All right.

16              MR. OWENS:  Thank you, Judge.

17              THE COURT:  Thank you.  Mr. Ginter, is there

18     anything that you want to add?

19              MR. GINTER:  Just briefly, Your Honor, if I may?

20              THE COURT:  Sure.

21              MR. GINTER:  I -- there was one point in terms of

22     the sufficiency or the bases for Detective Kim's opinion that

23     I wanted to make clear.  It is in our moving papers, but I

24     wanted to make it clear.  Mr. Harris in this case admits that

25     he sold drugs in Nickerson Gardens.  Detective Kim was aware
```

1    of that fact.  The -- the inference, if there ever could be

2    one, that someone sold drugs in Nickerson Gardens and not be

3    a member of the Bounty Hunter Bloods defies any type of

4    reasonable inference.

5            In the -- if I could follow up on that point,

6    because we haven't discussed qualified immunity as much.  I

7    understand Your Honor's tentative, but I would urge you to

8    consider the fact that because Detective Kim's report and

9    opinion is opinion evidence, we have to look at her specific

10   conduct and decide whether she's entitled to qualified

11   immunity.

12           So I would agree with you that if this were just a

13   case where Detective Kim said, I had a traffic stop with

14   Mr. Harris.  He self-admitted to me that he was a member of

15   the Bounty Hunter Bloods on X date, and that is the basis for

16   my opinion, and she -- there's a triable issue of fact about

17   whether she made that up or not, I agree.  She's not entitled

18   to qualified immunity because there's a question about

19   whether she completely made it up.

20           Her conduct is forming the opinion that she gave

21   and identifying the basis for it, which is only that he

22   self-admitted based on information she had which comes from

23   other sources.  Her partner of years who arrested Mr. Harris

24   in which he self-admitted, according to them, during that

25   arrest that he was a member of the Bounty Hunter Bloods.

```
1          THE COURT:  Right.
2          MR. GINTER:  And other evidence that she had at the
3    time.  The FI cards and everything else and her knowledge of
4    Mr. Harris knowing his associates, and the fact that the gang
5    injunction applied to him.
6          THE COURT:  Okay.  Thank you very much.  The matter
7    is taken under submission.  We'll issue an order as soon as
8    we can.
9          (Proceedings concluded 11:47 a.m.)
10                          CERTIFICATE
11   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT
12   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN
13   THE ABOVE MATTER.
14   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE
15   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE
16   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.
17
18   /s/ Miriam V. Baird            01/10/2025
19   MIRIAM V. BAIRD                      DATE
     OFFICIAL REPORTER
20
21
22
23
24
25
```

**/**

**/s** [1] - 34:18

**0**

**01/10/2025** [1] - 34:18

**1**

**1-053** [1] - 1:24
**11893** [1] - 1:23
**11:01** [1] - 3:1
**11:47** [1] - 34:9
**132** [1] - 20:7
**1336456** [1] - 10:7
**14** [1] - 10:17
**17** [2] - 1:19, 3:1
**1983** [3] - 3:24, 4:21, 14:14
**1997** [1] - 20:8

**2**

**2001** [1] - 23:10
**2016** [1] - 12:5
**2018** [1] - 20:9
**2024** [3] - 1:19, 3:1, 10:7
**2400** [1] - 2:13
**265** [1] - 2:6

**3**

**30** [1] - 30:1
**30(b)(6** [1] - 28:1

**4**

**411** [1] - 1:24
**444** [1] - 2:13
**45** [1] - 30:2
**463** [1] - 20:7

**8**

**85110** [1] - 2:6

**9**

**90071-2953** [1] - 2:14
**97201** [1] - 1:24
**98145-1110** [1] - 2:7

**A**

**a.m** [1] - 34:9
**A.M** [1] - 3:1
**ABOVE** [1] - 34:13
**absolve** [1] - 26:2
**according** [1] - 33:24
**acknowledge** [1] - 9:4

**act** [2] - 21:7, 31:22
**acting** [2] - 21:25, 22:1
**action** [1] - 5:25
**add** [2] - 25:8, 32:18
**address** [2] - 16:19, 31:9
**addresses** [1] - 30:18
**adequate** [2] - 5:10
**adequately** [1] - 5:4
**admit** [3] - 19:11, 26:1, 26:6
**admits** [1] - 32:24
**admitted** [18] - 5:18, 7:4, 7:8, 7:21, 11:14, 11:16, 11:17, 11:18, 11:21, 12:5, 12:6, 16:25, 26:5, 27:23, 33:14, 33:22, 33:24
**admitting** [1] - 28:2
**adoption** [1] - 5:10
**advance** [1] - 25:19
**ago** [1] - 22:23
**agree** [6] - 14:11, 18:2, 22:14, 25:16, 33:12, 33:17
**al** [1] - 3:5
**AL** [2] - 1:10, 2:12
**alleged** [2] - 21:20, 31:22
**allegedly** [1] - 10:11
**allow** [1] - 19:3
**allowed** [2] - 24:24, 26:12
**almost** [1] - 28:24
**altered** [1] - 25:3
**ANA** [2] - 1:24, 3:1
**AND** [4] - 2:3, 2:4, 2:12, 34:11
**AND/OR** [1] - 34:15
**ANGELES** [4] - 1:10, 1:18, 2:12, 2:14
**Angeles** [3] - 3:5, 3:12, 27:12
**answer** [3] - 4:8, 6:8, 31:18
**anticipate** [1] - 25:20
**ANY** [1] - 34:14
**apart** [1] - 8:25
**apologies** [2] - 16:10, 27:13
**apologize** [1] - 9:23
**Appeals** [1] - 12:14
**appear** [1] - 21:1
**appearance** [1] - 3:6
**applied** [2] - 5:21, 34:5
**applying** [1] - 28:9
**appreciate** [2] - 16:12, 28:5
**appropriate** [1] - 14:3
**Arave** [1] - 23:9
**ARAVE** [1] - 23:9
**ARE** [1] - 34:15
**argue** [2] - 3:22, 25:21
**arguing** [1] - 3:18
**argument** [1] - 14:9
**arose** [1] - 26:20
**arrest** [2] - 11:5, 33:25
**arrested** [4] - 22:12, 22:13, 29:21, 33:23
**aspect** [1] - 12:12
**associates** [1] - 34:4
**assume** [1] - 32:2
**attempt** [1] - 10:22

**attorney** [5] - 8:21, 8:24, 9:4, 25:4, 26:12
**authored** [1] - 16:23
**authorities** [1] - 17:22
**authority** [1] - 21:6
**automatic** [1] - 30:6
**available** [3] - 10:1, 10:5, 11:23
**aware** [3] - 7:14, 32:6, 32:25
**awry** [1] - 6:23

**B**

**background** [2] - 19:12, 30:23
**bad** [4] - 4:14, 19:4, 25:15, 28:8
**Bagley** [1] - 19:1
**Baird** [1] - 34:18
**BAIRD** [2] - 1:23, 34:19
**banc** [1] - 20:8
**based** [4] - 11:9, 11:10, 25:6, 33:22
**baseless** [1] - 10:18
**bases** [5] - 4:18, 7:19, 12:11, 12:12, 32:22
**basis** [17] - 10:23, 11:15, 12:4, 12:14, 12:22, 12:23, 12:24, 13:7, 13:10, 13:11, 13:16, 13:17, 14:1, 14:6, 17:17, 33:15, 33:21
**battle** [1] - 18:13
**bear** [1] - 20:11
**bears** [1] - 27:20
**became** [1] - 26:24
**become** [1] - 17:24
**becomes** [1] - 31:19
**beginning** [2] - 3:7, 8:23
**BEHALF** [2] - 2:3, 2:11
**behalf** [3] - 3:9, 3:12, 28:14
**benefit** [2] - 20:15, 20:17
**better** [1] - 26:5
**big** [2] - 20:4, 24:1
**biggest** [1] - 11:24
**bit** [4] - 8:10, 8:20, 18:1, 29:11
**blah** [2] - 19:8
**blending** [1] - 8:10
**Bloods** [5] - 7:6, 7:7, 33:3, 33:15, 33:25
**Bounty** [5] - 7:6, 7:7, 33:3, 33:15, 33:25
**BOX** [1] - 2:6
**Brady** [14] - 4:10, 4:12, 4:18, 4:19, 4:21, 5:12, 5:15, 16:19, 18:14, 26:18, 28:4, 31:5, 31:6, 31:12
**BRIAN** [1] - 2:11
**Brian** [1] - 3:11
**bridge** [1] - 20:5
**brief** [2] - 9:25, 12:13
**briefly** [1] - 32:19
**bring** [2] - 15:12, 15:21
**broad** [1] - 18:24
**broken** [1] - 3:25
**brown's** [1] - 29:3
**Bryan** [1] - 31:11
**bunch** [1] - 12:20

**burden** [3] - 10:21, 27:20, 30:11
**BURKE** [1] - 2:12

## C

**CA** [1] - 2:14
**Cal** [1] - 27:24
**Caldwell** [1] - 17:14
**calendar** [1] - 3:14
**CALIFORNIA** [4] - 1:2, 1:18, 1:24, 3:1
**cameras** [4] - 28:15, 28:19, 29:1, 29:5
**car** [1] - 28:23
**cards** [6] - 5:19, 11:23, 27:13, 27:15, 27:18, 34:3
**Carriger** [1] - 20:7
**case** [36] - 6:4, 8:24, 9:5, 9:22, 9:25, 10:7, 10:9, 10:10, 12:13, 12:16, 12:25, 14:9, 15:9, 15:10, 15:12, 15:15, 17:4, 18:8, 18:15, 18:16, 18:18, 20:8, 20:21, 21:6, 21:10, 21:25, 22:11, 22:15, 22:18, 24:14, 25:20, 25:24, 30:2, 32:4, 32:24, 33:13
**cases** [5] - 17:13, 17:25, 23:22, 30:21, 32:10
**categories** [2] - 4:1, 5:3
**category** [3] - 4:1, 4:9, 5:17
**caused** [3] - 15:21, 26:2, 30:25
**causes** [1] - 5:24
**CCRA** [1] - 1:23
**CENTRAL** [1] - 1:2
**CERTIFICATE** [1] - 34:10
**CERTIFY** [1] - 34:11
**challenge** [1] - 32:3
**championed** [1] - 8:22
**changes** [1] - 24:24
**character** [1] - 21:2
**charge** [2] - 13:5, 22:16
**CHARGED** [1] - 34:14
**charges** [1] - 13:12
**charging** [2] - 13:9, 13:16
**check** [1] - 24:8
**Circuit** [7] - 20:8, 23:9, 26:16, 30:20, 32:11, 32:13
**CIRCUIT** [1] - 34:14
**Circuits** [1] - 32:8
**circumstances** [4] - 23:14, 23:15, 23:18, 23:19
**cite** [1] - 10:4
**cited** [2] - 23:22, 30:21
**City** [10] - 3:5, 3:12, 5:2, 10:8, 17:8, 27:20, 27:23, 29:9, 29:16, 29:25
**CITY** [2] - 1:10, 2:12
**City's** [2] - 30:3, 30:23
**civil** [3] - 6:1, 13:7, 18:2
**CIVIL** [1] - 2:4
**claim** [22] - 4:19, 4:20, 4:22, 4:24, 5:1, 5:3, 5:12, 5:22, 6:1, 6:2, 13:7, 14:14, 14:17, 14:21, 15:14, 15:22, 27:16, 29:9, 30:11, 30:19
**claiming** [1] - 5:18

**claims** [9] - 3:16, 3:24, 4:21, 5:17, 6:6, 14:12, 18:5, 18:6, 30:20
**clear** [3] - 17:6, 32:23, 32:24
**clearly** [2] - 6:11, 22:18
**CLERK** [1] - 3:4
**client** [1] - 8:25
**CLINIC** [1] - 2:4
**cloth** [1] - 17:13
**cloud** [1] - 30:7
**comment** [1] - 25:8
**commit** [3] - 18:23, 23:3, 24:17
**committed** [2] - 20:15, 21:3, 25:2
**completely** [3] - 15:4, 17:5, 33:19
**concept** [1] - 17:16
**concern** [3] - 22:5, 26:11, 26:23
**concerned** [2] - 26:8, 26:24
**concerning** [1] - 5:11
**concerns** [2] - 26:20, 26:22
**conclude** [2] - 30:9, 30:15
**concluded** [1] - 34:9
**conclusion** [4] - 8:7, 9:6, 9:12, 14:2
**conduct** [3] - 15:4, 33:10, 33:20
**CONFERENCE** [1] - 34:16
**CONFORMANCE** [1] - 34:15
**confused** [1] - 8:4
**conscientious** [1] - 23:16
**consciousness** [1] - 23:20
**consider** [1] - 33:8
**conspiracy** [5] - 4:19, 4:22, 4:25, 6:1, 18:2
**constitution** [1] - 25:17
**constitutional** [5] - 5:7, 5:14, 5:22, 6:14, 26:8
**consulted** [1] - 8:14
**conversation** [1] - 29:20
**convicted** [2] - 9:14, 26:24
**convinced** [2] - 4:17, 19:23
**correct** [4] - 8:8, 11:2, 16:22, 19:22
**CORRECT** [1] - 34:11
**correctly** [2] - 9:9, 17:19
**counsel** [1] - 3:6
**County** [1] - 31:11
**course** [5] - 11:23, 12:14, 13:6, 13:11, 24:22
**court** [2] - 10:5, 10:9
**Court** [7] - 10:21, 12:14, 17:23, 28:10, 29:8, 31:3, 31:15
**COURT** [65] - 1:1, 1:23, 3:10, 3:13, 7:2, 7:7, 7:16, 8:3, 8:17, 9:12, 9:19, 10:3, 10:6, 10:13, 10:25, 12:2, 12:17, 13:1, 13:13, 13:25, 14:8, 14:16, 14:22, 15:2, 15:6, 15:8, 15:17, 15:19, 15:25, 16:2, 16:4, 16:6, 16:8, 16:11, 16:15, 16:18, 18:9, 19:11, 19:20, 19:23, 20:21, 20:25, 21:10, 21:14, 21:17, 22:17, 23:23, 24:1, 24:4, 24:11, 24:22, 25:8, 25:23, 28:12, 30:1, 31:20, 31:24, 32:2, 32:9, 32:12, 32:15, 32:17, 32:20, 34:1, 34:6

**Court's** [5] - 16:13, 16:22, 21:6, 22:5, 28:5
**courthouse** [1] - 16:10
**covered** [1] - 6:17
**covers** [1] - 31:18
**CPD** [1] - 27:12
**create** [2] - 12:8, 14:22
**credibility** [4] - 20:11, 22:1, 25:6, 31:18
**crime** [8] - 8:1, 18:24, 20:15, 20:17, 21:3, 23:4, 24:18, 25:2
**criminal** [10] - 8:21, 9:1, 9:3, 9:5, 9:9, 18:17, 19:3, 19:6, 24:13, 27:6
**cross** [1] - 22:25
**cross-examine** [1] - 22:25
**crucial** [1] - 25:5
**CSR** [1] - 1:23
**custom** [1] - 5:18
**CV** [2] - 7:14, 24:14
**CV21-07999-WLH** [1] - 1:8
**CV21-079999-WLH** [1] - 3:4

## D

**D.A.'s** [1] - 19:12
**damage** [2] - 15:21, 15:23
**DATE** [1] - 34:19
**date** [2] - 11:18, 33:15
**David** [1] - 3:8
**DAVID** [1] - 2:3
**daylight** [1] - 18:24
**days** [1] - 30:1
**decades** [1] - 8:14
**decide** [1] - 33:10
**decision** [6] - 10:5, 10:18, 13:5, 13:9, 13:16, 23:9
**defendant** [4] - 10:19, 19:3, 21:3, 30:22
**DEFENDANT** [1] - 2:11
**defendant's** [1] - 3:14
**defendants** [2] - 15:15, 21:1
**Defendants** [1] - 1:12
**defendants'** [1] - 3:15
**defense** [8] - 8:21, 9:4, 22:24, 24:13, 24:18, 25:4, 25:21, 26:12
**defies** [1] - 33:3
**definitely** [2] - 20:23, 20:25
**deliberate** [2] - 17:16, 26:17
**denied** [4] - 4:19, 6:10, 8:25, 9:7
**deny** [4] - 4:2, 4:24, 5:16, 14:12
**denying** [2] - 5:25, 6:15
**dep** [1] - 28:1
**department** [3] - 10:15, 15:5, 15:18
**DEPOSIT** [1] - 34:15
**deposition** [3] - 8:24, 15:1, 31:5
**deprived** [2] - 5:7, 5:21
**DEREK** [2] - 1:4, 2:3
**Derrick** [2] - 3:4, 3:9
**description** [1] - 8:8
**despite** [1] - 24:15
**Detective** [16] - 4:5, 4:15, 6:3, 6:24,

7:12, 9:18, 11:1, 13:15, 14:7, 16:23, 19:17, 27:5, 32:22, 32:25, 33:8, 33:13
**detective** [1] - 7:20
**detectives** [1] - 10:11
**determination** [1] - 6:24
**determinations** [1] - 14:25
**determined** [1] - 12:15
**difference** [1] - 24:2
**different** [4] - 7:24, 22:14, 23:4, 26:13
**difficult** [1] - 12:18
**digress** [1] - 8:15
**diminish** [1] - 23:21
**direct** [1] - 29:2
**disclose** [3] - 3:17, 20:10, 31:17
**disclosed** [6] - 19:1, 19:5, 22:10, 22:24, 23:24, 27:5
**disclosure** [2] - 22:22, 26:10
**discomfort** [1] - 25:9
**discovery** [5] - 19:13, 27:22, 30:3, 30:7
**discussed** [1] - 33:6
**dismissed** [1] - 10:11
**dispute** [3] - 22:17, 26:19, 27:7
**disputes** [1] - 13:19
**distinction** [1] - 28:6
**district** [3] - 8:24, 10:5, 10:9
**DISTRICT** [3] - 1:1, 1:2, 1:23
**division** [1] - 15:5
**document** [7] - 17:3, 19:15, 22:7, 22:23, 22:24, 23:1, 24:5
**documents** [1] - 31:9
**done** [1] - 30:15
**double** [1] - 24:8
**double-check** [1] - 24:8
**down** [2] - 19:25, 20:2
**draw** [1] - 9:12
**drawn** [3] - 8:12, 11:19, 11:22
**drove** [1] - 28:23
**drugs** [2] - 32:25, 33:2
**during** [6] - 9:1, 9:8, 11:19, 12:5, 26:21, 33:24
**duty** [2] - 20:12

### E

**easy** [1] - 12:3
**electronic** [1] - 5:5
**en** [1] - 20:8
**encounter** [1] - 21:20
**end** [2] - 26:6, 26:14
**engaged** [1] - 15:10
**enhance** [2] - 23:16, 23:20
**enhancement** [1] - 8:2
**entitled** [3] - 12:16, 33:10, 33:17
**erase** [1] - 26:3
**especially** [1] - 28:21
**established** [1] - 31:12
**et** [1] - 3:5
**ET** [2] - 1:10, 2:12
**event** [1] - 10:2

**events** [2] - 11:8, 23:10
**evidence** [45] - 4:1, 4:3, 4:5, 4:18, 4:23, 5:5, 5:11, 6:4, 6:11, 7:12, 7:17, 7:24, 8:5, 9:2, 9:5, 9:10, 9:17, 10:11, 10:23, 11:20, 11:24, 12:9, 13:4, 14:6, 14:14, 14:19, 14:23, 15:10, 18:21, 19:1, 19:2, 20:10, 20:22, 22:16, 23:13, 23:17, 25:18, 26:15, 26:21, 27:1, 29:2, 29:17, 30:25, 33:9, 34:2
**evidentiary** [1] - 28:14
**exact** [1] - 27:23
**exactly** [1] - 17:17
**examine** [1] - 22:25
**examiner** [1] - 12:15
**example** [2] - 7:4, 13:19
**exclude** [1] - 13:18
**exculpatory** [7] - 4:13, 4:17, 18:24, 19:16, 28:7, 28:8, 30:16
**excuse** [1] - 9:24
**exist** [2] - 19:14, 29:24
**exists** [1] - 29:7
**exonerate** [1] - 25:22
**expect** [1] - 22:5
**experience** [1] - 8:13
**expert** [17] - 10:13, 10:14, 10:20, 12:19, 12:20, 21:15, 21:25, 22:2, 22:8, 22:22, 23:12, 24:15, 24:19, 27:8, 29:13, 30:13, 31:19
**expert's** [2] - 18:16, 24:5
**experts** [1] - 22:2
**explained** [3] - 11:19, 12:13, 14:25
**extent** [2] - 20:20, 27:8

### F

**F.3d** [1] - 20:7
**fabricate** [2] - 6:11, 17:11
**fabricated** [3] - 4:5, 6:3, 12:9
**fabricating** [1] - 10:11
**fabrication** [9] - 4:1, 4:3, 4:23, 4:25, 14:14, 16:17, 16:21, 17:12, 18:1
**fact** [19] - 4:4, 5:19, 5:20, 6:11, 7:1, 7:9, 8:4, 12:8, 12:19, 13:17, 18:3, 25:11, 26:19, 26:20, 28:1, 33:1, 33:8, 33:16, 34:4
**facts** [7] - 12:20, 13:8, 14:1, 17:19, 21:22, 26:15, 31:19
**failed** [1] - 24:6
**failure** [6] - 5:4, 5:8, 28:14, 29:15, 30:23, 31:8
**faith** [3] - 4:14, 19:4, 28:8
**fall** [4] - 6:2, 14:13, 18:3, 18:6
**fallen** [1] - 6:13
**falls** [1] - 4:23
**false** [1] - 12:20
**falsifying** [1] - 14:17
**far** [1] - 19:20
**Farrelly** [1] - 30:20
**federal** [2] - 16:10, 18:2
**FEE** [1] - 34:14

**FEES** [1] - 34:14
**felt** [2] - 26:10, 26:11
**FI** [5] - 11:23, 27:13, 27:15, 27:18, 34:3
**FI-cards** [1] - 11:23
**field** [1] - 5:19
**file** [2] - 18:9, 31:25
**filed** [1] - 10:2
**final** [1] - 31:3
**fine** [1] - 18:10
**first** [4] - 4:1, 5:4, 5:14, 16:21
**FIs** [1] - 14:17
**FLOWER** [1] - 2:13
**focus** [1] - 8:18
**folks** [2] - 26:5, 28:18
**follow** [2] - 18:5, 33:5
**FOR** [1] - 34:14
**force** [5] - 23:13, 23:16, 23:17, 23:20, 31:2
**FOREGOING** [1] - 34:11
**forget** [1] - 8:16
**forgive** [1] - 24:10
**forming** [1] - 33:20
**forth** [1] - 31:4
**forward** [1] - 5:22
**FOURTH** [1] - 1:24
**frank** [1] - 29:8
**Franks** [1] - 17:25
**fraud** [2] - 23:15, 23:19
**free** [1] - 22:3
**free-ranging** [1] - 22:3
**FRIDAY** [2] - 1:19, 3:1
**friend** [1] - 16:12
**friend's** [1] - 27:11
**friends** [1] - 17:9
**front** [1] - 26:6
**full** [1] - 20:19
**future** [1] - 25:14

### G

**gang** [37] - 5:18, 7:5, 7:18, 8:1, 8:8, 8:12, 8:19, 9:1, 9:6, 9:7, 9:11, 9:18, 10:20, 11:15, 11:16, 11:18, 11:21, 11:25, 12:1, 12:4, 12:7, 13:17, 13:22, 16:24, 17:2, 17:5, 19:7, 20:14, 20:15, 20:17, 22:15, 22:16, 25:1, 27:8, 34:4
**Gangs** [1] - 27:24
**gap** [1] - 20:5
**Garcia** [1] - 27:18
**Gardens** [6] - 4:11, 28:16, 28:18, 30:6, 32:25, 33:2
**GATES** [1] - 2:5
**generally** [2] - 19:14, 22:21
**genuine** [1] - 4:4
**ginter** [1] - 32:17
**GINTER** [34] - 2:11, 3:11, 6:19, 7:6, 7:11, 7:17, 8:10, 8:18, 9:16, 9:21, 10:4, 10:7, 10:14, 11:3, 12:10, 12:23, 13:2, 13:24, 14:4, 14:11, 14:19, 14:24,

15:3, 15:7, 15:13, 15:18, 15:23, 16:1, 16:3, 16:5, 16:7, 32:19, 32:21, 34:2
**Ginter** [2] - 3:12, 6:16
**given** [3] - 10:20, 10:23, 29:11
**glad** [1] - 26:10
**gosh** [1] - 23:2
**government** [1] - 25:18
**government's** [1] - 20:10
**grant** [3] - 4:11, 5:6, 5:13
**granted** [2] - 4:21, 10:12
**greater** [1] - 29:16
**guess** [1] - 22:20
**guilt** [1] - 26:11
**guy** [2] - 19:7, 23:3

## H

**HALL** [1] - 2:5
**HARRIS** [2] - 1:4, 2:3
**Harris** [26] - 3:4, 3:9, 9:10, 11:14, 15:23, 16:9, 16:24, 17:1, 17:7, 18:4, 18:19, 18:22, 20:14, 22:7, 22:13, 24:16, 25:7, 25:22, 27:8, 27:15, 28:22, 29:1, 32:24, 33:14, 33:23, 34:4
**Harris's** [2] - 29:20, 30:13
**Hawkins** [2] - 28:22, 28:23
**head** [8] - 7:15, 19:18, 22:4, 23:2, 24:5, 28:16, 31:17, 32:10
**heading** [1] - 10:17
**hear** [2] - 30:12, 30:13
**heard** [2] - 6:18, 31:6
**Hearing** [1] - 1:17
**hearing** [4] - 3:21, 9:23, 11:20, 18:18
**heavily** [1] - 11:24
**heinous** [1] - 18:23
**helped** [1] - 25:22
**HEREBY** [1] - 34:11
**herself** [1] - 30:21
**hesitate** [1] - 11:3
**hesitating** [1] - 32:7
**holding** [1] - 10:10
**Honor** [19] - 3:8, 3:11, 6:19, 6:20, 7:14, 8:10, 8:15, 9:21, 10:17, 11:13, 12:11, 12:24, 14:4, 14:11, 15:24, 16:1, 16:7, 16:9, 32:19
**Honor's** [1] - 33:7
**HONORABLE** [1] - 1:3
**HSU** [1] - 1:3
**Hunter** [5] - 7:6, 7:7, 33:3, 33:15, 33:25
**hypothetical** [2] - 12:3, 17:1

## I

**idea** [3] - 17:16, 17:25, 28:21
**identified** [1] - 12:1
**identifying** [1] - 33:21
**ignore** [1] - 25:2
**IIED** [2] - 6:1, 18:2
**imagine** [1] - 19:5
**immunity** [5] - 6:9, 6:15, 33:6, 33:11,

33:18
**impeach** [1] - 24:12
**impeached** [1] - 23:11
**impeaching** [2] - 18:25, 19:1
**impeachment** [2] - 19:16, 22:21
**implement** [1] - 30:23
**important** [5] - 13:3, 13:9, 18:19, 22:18, 22:19
**imposed** [1] - 25:17
**imposing** [1] - 25:10
**IN** [4] - 2:3, 2:11, 34:12, 34:15
**inadequate** [1] - 31:8
**incentive** [5] - 25:9, 25:12, 25:17, 26:5, 26:7
**incident** [1] - 30:5
**incidents** [1] - 31:11
**including** [2] - 11:22, 13:17
**incriminating** [1] - 7:23
**indicate** [1] - 16:23
**indications** [2] - 23:15, 23:19
**indifference** [1] - 26:17
**individual** [2] - 15:15, 29:16
**inference** [2] - 33:1, 33:4
**information** [5] - 8:11, 10:19, 23:11, 30:8, 33:22
**informed** [1] - 13:21
**initiator** [1] - 8:5
**injunction** [3] - 11:25, 13:20, 34:5
**innocence** [1] - 8:22
**instinct** [1] - 16:22
**institute** [1] - 5:4
**institutional** [1] - 29:15
**intangible** [1] - 32:5
**interaction** [1] - 11:13
**interactions** [1] - 24:16
**interesting** [1] - 8:20
**interrogation** [1] - 29:20
**interview** [2] - 5:19, 17:18
**introduced** [1] - 27:14
**investigating** [1] - 10:10
**investigation** [4] - 14:24, 15:4, 19:4, 29:12
**involve** [1] - 17:12
**involved** [2] - 15:9, 15:10
**IS** [1] - 34:11
**issue** [16] - 4:3, 4:4, 4:6, 7:11, 16:21, 16:23, 22:1, 25:6, 26:25, 28:1, 28:4, 30:18, 32:4, 32:5, 33:16, 34:7
**issued** [1] - 31:3
**issues** [5] - 3:21, 4:12, 6:21, 16:20, 18:2
**itself** [2] - 14:22, 28:16

## J

**jeopardize** [1] - 25:14
**joint** [2] - 9:25, 12:13
**Jose** [1] - 10:8
**judge** [1] - 21:1
**JUDGE** [1] - 1:3

**Judge** [2] - 18:12, 32:16
**judgment** [17] - 3:15, 3:16, 4:3, 4:12, 4:20, 4:24, 5:13, 5:16, 5:25, 6:10, 10:10, 10:12, 12:16, 12:21, 14:2, 14:13, 27:21
**JUDICIAL** [1] - 34:16
**jury** [15] - 4:7, 5:23, 6:6, 9:5, 9:9, 9:14, 12:8, 18:3, 18:4, 29:6, 30:9, 30:12, 31:1
**jury's** [1] - 6:2
**JUSTICE** [1] - 2:4

## K

**kicked** [1] - 27:24
**Kim** [32] - 3:12, 4:5, 6:3, 6:25, 7:12, 11:1, 13:15, 15:24, 16:23, 18:5, 18:14, 18:17, 19:6, 19:8, 20:1, 20:13, 21:15, 21:22, 22:11, 24:25, 25:21, 26:10, 26:19, 27:5, 29:10, 29:18, 30:21, 31:5, 31:17, 32:25, 33:13
**Kim's** [9] - 4:15, 9:8, 9:18, 14:7, 19:17, 23:2, 24:14, 32:22, 33:8
**kind** [5] - 19:9, 23:3, 26:22, 27:16, 31:4
**knowing** [3] - 21:23, 34:4
**knowledge** [5] - 8:13, 11:10, 11:21, 18:22, 34:3
**knowledgeable** [1] - 8:12
**known** [4] - 6:13, 24:20, 27:4, 31:23
**knows** [2] - 21:21, 27:7
**Kostanich** [1] - 17:14
**Kyles** [5] - 18:25, 19:2, 21:12, 23:12, 23:21

## L

**L.A** [1] - 27:23
**Lacy** [1] - 12:13
**language** [1] - 12:25
**LAPD** [1] - 14:22
**last** [1] - 5:17
**LAW** [1] - 2:5
**law** [1] - 6:2
**leap** [1] - 20:4
**least** [2] - 3:23, 28:10
**led** [1] - 8:5
**length** [1] - 31:12
**less** [1] - 13:23
**LESS** [1] - 34:14
**liability** [1] - 5:2
**liable** [2] - 25:11, 30:22
**lied** [1] - 9:7
**litigated** [1] - 32:7
**lived** [1] - 28:22
**LLP** [1] - 2:12
**located** [2] - 9:22, 28:15
**location** [1] - 7:22
**locations** [1] - 29:5
**LOEVY** [2] - 2:3
**logical** [1] - 20:4

**logically** [1] - 18:5
**look** [6] - 14:9, 18:8, 25:21, 28:14, 30:12, 33:9
**looked** [2] - 8:6, 24:14
**LOS** [4] - 1:10, 1:18, 2:12, 2:14
**Los** [2] - 3:12, 27:12
**lose** [1] - 30:11
**lower** [1] - 28:9
**lying** [2] - 9:13, 9:14

# M

**mad** [1] - 25:22
**major** [1] - 27:7
**man** [1] - 26:21
**maps** [3] - 28:14, 29:5, 30:12
**material** [8] - 4:4, 5:11, 13:14, 17:24, 19:16, 25:18, 26:18, 27:22
**materially** [3] - 18:25, 19:1, 19:16
**matter** [2] - 3:14, 34:6
**MATTER** [1] - 34:13
**matters** [1] - 27:1
**MAY** [2] - 1:19, 3:1
**mean** [9] - 14:18, 17:4, 17:8, 20:25, 21:5, 23:1, 23:4, 24:1
**meaning** [2] - 4:18, 16:4
**means** [2] - 17:2, 17:11
**meaty** [1] - 3:18
**mechanism** [1] - 29:17
**medical** [1] - 12:15
**Mellen** [1] - 20:9
**member** [28] - 7:5, 7:8, 7:18, 8:8, 8:19, 9:1, 9:6, 9:7, 9:11, 9:18, 11:15, 11:17, 11:18, 11:22, 12:1, 12:4, 12:6, 12:7, 13:18, 16:24, 17:3, 17:5, 19:8, 20:14, 27:8, 33:3, 33:14, 33:25
**members** [1] - 13:22
**membership** [1] - 5:19
**memorized** [1] - 11:4
**mens** [2] - 26:24, 29:11
**mentioned** [3] - 11:8, 13:2, 27:19
**might** [1] - 25:10
**mile** [1] - 28:24
**mind** [4] - 3:25, 8:20, 16:17, 20:23
**Miriam** [1] - 34:18
**MIRIAM** [2] - 1:23, 34:19
**mischaracterization** [1] - 17:17
**mischaracterizations** [2] - 17:16, 17:20
**mischaracterize** [1] - 17:19
**misleading** [1] - 17:24
**misspoken** [1] - 12:24
**mistake** [2] - 26:1, 26:2
**mistakes** [2] - 26:1, 26:6
**moment** [1] - 8:15
**Monell** [7] - 5:2, 5:17, 14:16, 14:20, 15:13, 16:19, 30:19
**morning** [4] - 3:8, 3:10, 3:11, 3:13
**motion** [6] - 1:17, 3:14, 3:15, 4:20, 6:16, 10:24

**moving** [4] - 4:22, 10:19, 31:2, 32:23
**MR** [63] - 3:8, 3:11, 6:19, 7:6, 7:11, 7:17, 8:10, 8:18, 9:16, 9:21, 10:4, 10:7, 10:14, 11:3, 12:10, 12:23, 13:2, 13:24, 14:4, 14:11, 14:19, 14:24, 15:3, 15:7, 15:13, 15:18, 15:23, 16:1, 16:3, 16:5, 16:7, 16:9, 16:12, 16:16, 16:19, 18:12, 19:19, 19:22, 20:5, 20:24, 21:9, 21:11, 21:15, 21:18, 23:6, 23:25, 24:3, 24:7, 24:12, 24:23, 25:16, 25:24, 28:13, 30:2, 31:23, 32:1, 32:6, 32:10, 32:14, 32:16, 32:19, 32:21, 34:2
**must** [1] - 19:4

# N

**name** [1] - 10:7
**narrow** [6] - 6:7, 18:1, 18:3
**narrowed** [1] - 15:14
**nature** [1] - 20:22
**necessarily** [3] - 6:25, 7:25, 28:25
**need** [5] - 14:5, 15:16, 18:9, 31:10, 32:13
**needed** [2] - 4:13, 20:2
**never** [9] - 7:8, 7:23, 12:6, 12:7, 13:19, 19:20, 24:9, 24:20, 25:12
**new** [1] - 18:8
**Nickerson** [4] - 4:10, 30:6, 32:25, 33:2
**night** [1] - 7:22
**Ninth** [7] - 20:7, 20:8, 23:9, 26:16, 30:20, 32:11, 32:12
**non** [1] - 24:17
**non-violent** [1] - 24:17
**normally** [1] - 3:16
**nowhere** [1] - 28:19
**numerous** [1] - 24:16

# O

**objective** [1] - 6:12
**obligation** [4] - 19:24, 20:10, 22:6, 22:22
**obligations** [2] - 19:13, 31:14
**observations** [1] - 24:16
**obtained** [2] - 23:14, 23:18
**obvious** [2] - 31:13, 31:16
**obviously** [7] - 6:20, 10:1, 18:7, 23:10, 28:8, 29:19, 30:14
**odd** [1] - 9:2
**OF** [10] - 1:2, 1:10, 1:16, 2:3, 2:4, 2:11, 2:12, 34:12, 34:16
**offense** [1] - 13:5
**offer** [1] - 22:2
**office** [2] - 13:15, 19:12
**Officer** [16] - 18:17, 19:6, 19:8, 20:1, 20:13, 22:11, 23:2, 25:21, 26:10, 26:19, 27:17, 29:10, 30:21, 31:5, 31:16
**officer** [10] - 6:12, 9:17, 10:14, 25:13, 27:2, 29:18, 31:7, 31:21

**officers** [11] - 8:7, 11:22, 15:4, 15:9, 15:10, 15:15, 24:13, 27:12, 27:13, 30:14, 31:13
**OFFICIAL** [2] - 1:23, 34:19
**Oftenburg** [1] - 29:18
**old** [1] - 28:23
**omissions** [2] - 17:21, 17:24
**omitted** [3] - 20:16, 20:18, 22:9
**once** [3] - 22:6, 26:23, 31:18
**one** [16] - 12:11, 12:19, 17:10, 21:13, 22:3, 22:4, 25:19, 27:10, 27:16, 30:19, 31:9, 31:10, 32:3, 32:11, 32:21, 33:2
**ones** [1] - 17:20
**operated** [1] - 25:4
**opinion** [32] - 6:25, 7:13, 7:18, 7:24, 8:6, 9:18, 10:20, 10:23, 11:8, 11:9, 12:4, 12:9, 12:11, 12:14, 12:19, 12:22, 14:7, 18:16, 20:20, 20:23, 21:16, 22:8, 23:12, 24:4, 24:15, 25:13, 32:5, 32:22, 33:9, 33:16, 33:20
**opinions** [4] - 4:16, 22:2, 27:9
**order** [2] - 15:21, 34:7
**outset** [1] - 29:18
**outside** [1] - 6:13
**overall** [3] - 12:9, 12:11, 15:18
**overwhelming** [2] - 9:3, 9:10
**OWENS** [30] - 2:3, 16:9, 16:12, 16:16, 16:19, 18:12, 19:19, 19:22, 20:5, 20:24, 21:9, 21:11, 21:15, 21:18, 23:6, 23:25, 24:3, 24:7, 24:12, 24:23, 25:16, 25:24, 28:13, 30:2, 31:23, 32:1, 32:6, 32:10, 32:14, 32:16
**Owens** [2] - 3:9, 16:8
**own** [7] - 8:11, 8:23, 11:9, 11:13, 30:3, 31:15
**OWNES** [1] - 3:8

# P

**page** [1] - 10:17
**papers** [2] - 11:25, 32:23
**paradigm** [1] - 23:5
**Paradis** [2] - 23:9, 23:24
**paraphrase** [1] - 19:2
**pardon** [1] - 16:3
**Parker** [3] - 22:12, 29:13, 29:18
**Parker's** [1] - 29:12
**part** [13] - 10:16, 11:8, 12:3, 12:9, 13:3, 22:18, 22:19, 24:19, 25:24, 27:15, 29:19, 29:20
**particular** [3] - 7:22, 18:15
**parties** [1] - 3:17
**partner** [3] - 8:13, 11:22, 33:23
**passed** [1] - 28:25
**patrol** [2] - 31:7, 31:13
**pattern** [4] - 14:23, 15:11, 15:14, 15:20
**pending** [1] - 6:17
**people** [5] - 11:10, 25:25, 27:18, 28:2, 30:3
**people's** [1] - 5:18

**percipient** [1] - 11:2
**perfect** [1] - 30:22
**performed** [1] - 11:5
**perhaps** [1] - 28:13
**period** [2] - 30:4, 30:5
**person** [5] - 7:21, 18:23, 19:9, 20:17, 24:17
**personal** [2] - 4:16, 8:11
**personally** [1] - 20:16
**pervasive** [1] - 28:2
**philosophical** [1] - 25:9
**pie** [1] - 17:10
**piece** [1] - 11:24
**pivot** [1] - 27:10
**place** [3] - 28:20, 29:11, 30:6
**plaintiff** [10] - 3:7, 4:16, 6:24, 7:23, 8:19, 9:4, 10:22, 15:11, 16:4, 23:3
**Plaintiff** [1] - 1:6
**PLAINTIFF** [1] - 2:3
**plaintiff's** [3] - 6:14, 8:21, 13:23
**playing** [1] - 19:5
**pled** [1] - 21:4
**plenty** [1] - 9:5
**PO** [1] - 2:6
**point** [9] - 9:16, 9:20, 23:6, 27:16, 28:25, 30:12, 32:21, 33:5
**police** [9] - 10:15, 13:24, 23:13, 23:16, 23:20, 24:13, 25:13, 30:5, 30:14
**policies** [1] - 5:10
**position** [4] - 13:13, 13:14, 13:23, 26:23
**possibility** [2] - 23:15, 23:19
**possible** [1] - 12:18
**possibly** [1] - 22:4
**potential** [1] - 27:21
**potentially** [3] - 4:13, 28:7, 30:16
**practice** [12] - 3:17, 5:18, 5:21, 14:17, 14:20, 14:23, 15:11, 15:14, 15:16, 15:21, 27:19, 28:2
**precipitant** [1] - 21:19
**precipitantly** [1] - 11:7
**predates** [1] - 21:7
**preliminary** [1] - 11:20, 13:20, 18:18
**prepared** [1] - 7:12
**preparing** [1] - 9:22
**presented** [2] - 7:12, 13:15
**preservation** [2] - 5:5, 30:24
**preserve** [1] - 5:8
**preserved** [1] - 30:14
**preserving** [1] - 29:17
**PRESIDING** [1] - 1:3
**presumably** [1] - 15:20
**pretty** [1] - 6:7
**principal** [1] - 14:13
**principle** [3] - 20:6, 22:20, 32:13
**probative** [4] - 23:13, 23:16, 23:17, 23:20
**problem** [1] - 16:11
**procedural** [2] - 5:4, 30:23
**PROCEEDINGS** [2] - 1:16, 34:12

**proceedings** [3] - 18:18, 27:6, 34:9
**produced** [1] - 17:4
**production** [2] - 5:11, 30:24
**proffer** [1] - 22:7
**proffered** [1] - 18:1
**prong** [1] - 5:14
**proper** [1] - 12:11
**prosecution** [2] - 24:6, 25:14
**prosecutor** [7] - 13:4, 13:11, 19:13, 21:24, 22:19, 24:9, 27:17
**prosecutor's** [2] - 13:9, 13:15
**prosecutors** [2] - 7:13, 7:25, 13:4
**provided** [1] - 10:19
**providing** [1] - 21:16
**published** [1] - 9:25
**pursue** [1] - 13:6
**put** [4] - 20:2, 21:21, 25:1, 26:15

## Q

**qualified** [5] - 6:9, 6:15, 33:6, 33:10, 33:18
**quarters** [1] - 28:24
**questions** [1] - 31:15
**quintessential** [1] - 4:7

## R

**raise** [2] - 23:15, 23:19
**raises** [1] - 28:1
**ran** [1] - 28:18
**random** [1] - 27:18
**ranging** [1] - 22:3
**rather** [1] - 21:22
**rea** [2] - 26:25, 29:11
**reach** [2] - 9:5, 14:1
**read** [3] - 16:22, 18:7, 26:20
**ready** [1] - 3:19
**really** [8] - 6:8, 9:8, 14:5, 17:6, 20:19, 21:2, 23:2, 30:25
**reason** [6] - 5:12, 10:16, 22:15, 26:15, 27:1, 32:6
**reasonable** [7] - 6:12, 27:2, 29:6, 30:9, 30:12, 31:1, 33:4
**reasons** [2] - 4:25, 7:19
**rebuttal** [1] - 18:19
**reciting** [1] - 7:25
**recklessness** [1] - 26:17
**record** [2] - 3:7, 16:22
**RECORDED** [1] - 34:12
**REDUCTION** [1] - 34:15
**reemphasized** [1] - 20:9
**regarding** [1] - 4:16
**REGULATIONS** [1] - 34:16
**relates** [4] - 16:21, 28:4, 31:2, 31:4
**relied** [1] - 21:24
**rely** [1] - 11:24
**remaining** [1] - 3:15
**remember** [2] - 7:5, 27:17

**remind** [1] - 10:25
**reminded** [1] - 23:7
**repeated** [3] - 14:20, 15:16, 31:11
**reply** [1] - 10:1
**report** [11] - 11:16, 11:17, 17:19, 18:16, 19:15, 20:13, 21:23, 24:20, 30:5, 33:8
**REPORTER** [2] - 1:23, 34:19
**REPORTER'S** [1] - 1:16
**reports** [1] - 16:23
**request** [2] - 4:2, 4:11
**required** [3] - 14:20, 30:10, 30:16
**requires** [3] - 13:10, 25:18, 28:9
**resolve** [1] - 27:24
**respect** [21] - 3:24, 4:9, 4:10, 4:15, 4:19, 4:21, 5:2, 5:6, 5:8, 5:9, 5:13, 5:17, 5:24, 6:5, 6:9, 6:10, 18:14, 26:17, 29:9, 29:10, 30:18
**responding** [1] - 16:16
**response** [1] - 30:3
**retention** [1] - 30:4
**rightly** [3] - 8:23, 12:15, 13:11
**RIGHTS** [1] - 2:4
**rights** [1] - 6:14
**rise** [4] - 6:2, 14:13, 18:3, 18:6
**rises** [1] - 4:23
**route** [1] - 29:1
**Rubalcava** [4] - 10:8, 12:25, 14:9, 31:25
**rules** [1] - 26:8
**running** [1] - 28:24

## S

**safeguards** [2] - 5:5, 30:24
**San** [1] - 10:8
**SANTA** [1] - 1:24, 3:1
**SEATTLE** [1] - 2:7
**second** [3] - 4:9, 5:9, 19:11
**secretly** [1] - 20:18
**Section** [1] - 4:21
**see** [5] - 9:19, 10:25, 13:1, 15:2, 15:6
**selectively** [1] - 20:16
**self** [11] - 5:18, 11:14, 11:16, 11:17, 11:18, 11:21, 16:25, 28:2, 33:14, 33:22, 33:24
**self-admitted** [10] - 5:18, 11:14, 11:16, 11:17, 11:18, 11:21, 16:25, 33:14, 33:22, 33:24
**self-admitting** [1] - 28:2
**sense** [1] - 6:5
**separate** [1] - 15:4
**series** [1] - 31:11
**served** [3] - 11:25, 13:20, 13:22
**shaking** [1] - 7:15
**Sharon** [1] - 3:12
**shift** [1] - 10:21
**show** [4] - 10:22, 15:20, 28:7, 29:5
**showing** [3] - 5:7, 15:16, 27:21
**shown** [2] - 4:14
**shows** [1] - 29:22

sic [2] - 11:7, 21:19
side [5] - 18:1, 18:5, 19:25, 20:3, 25:1
sides [1] - 18:4
significant [2] - 10:16, 22:16
similar [2] - 9:22, 10:9
simply [1] - 7:19
sitting [3] - 19:6, 19:24, 20:18
situation [3] - 7:20, 27:3, 29:15
sketchy [1] - 26:22
sky [1] - 17:11
slovenly [2] - 23:17, 23:21
society [1] - 25:25
sold [2] - 32:25, 33:2
someone [2] - 8:22, 33:2
soon [1] - 34:7
SORENSEN [1] - 2:12
sorry [3] - 4:20, 6:13, 27:12
sort [7] - 3:25, 16:13, 17:10, 17:22, 18:13, 24:9
sorts [1] - 29:1
sources [1] - 33:23
SOUTH [1] - 2:13
speaking [2] - 19:14, 22:21
specific [4] - 7:3, 15:15, 23:23, 33:9
specifically [1] - 29:10
Spencer [1] - 17:14
spend [1] - 23:7
stand [2] - 8:25, 9:7
standard [1] - 28:9
start [3] - 3:20, 16:16, 20:6
state [2] - 3:6, 6:2
State's [1] - 18:18
statement [4] - 11:16, 19:15, 21:21, 26:15
STATES [2] - 1:1, 34:16
station [1] - 13:24, 22:13
STENOGRAPHICALLY [1] - 34:12
step [1] - 21:13
Stewart [1] - 20:7
stick [1] - 18:14
still [2] - 10:2, 12:21
stop [3] - 12:5, 19:11, 33:13
strategy [1] - 24:24
STREET [2] - 1:24, 2:13
strictly [1] - 18:24
stronger [1] - 29:9
structure [5] - 25:9, 25:17, 26:5, 26:7, 28:15
stuff [2] - 16:25, 25:1
subject [2] - 10:24, 11:5
submission [1] - 34:7
submitted [1] - 9:25
subpoena [1] - 30:3
subsequent [2] - 14:24, 15:3
suddenly [1] - 26:24
sufficiency [1] - 32:22
sufficient [13] - 9:17, 10:19, 10:21, 12:8, 12:24, 13:10, 13:11, 13:16, 13:17, 14:1, 14:6, 26:9, 27:19

suggestion [1] - 27:11
SUITE [3] - 1:24, 2:5, 2:13
summary [17] - 3:14, 3:16, 4:2, 4:12, 4:20, 4:24, 5:13, 5:16, 5:25, 6:9, 10:9, 10:12, 12:16, 12:21, 14:2, 14:12, 27:21
supplemental [2] - 18:10, 31:25
supporting [1] - 10:20
suppressed [1] - 23:11
suppression [2] - 5:11, 26:18
Supreme [1] - 21:6
surprising [1] - 21:2
sustain [1] - 15:13

## T

talks [2] - 10:18, 23:12
tattoos [1] - 17:1
teach [1] - 31:13
tentative [12] - 3:17, 3:19, 3:22, 3:24, 4:2, 4:11, 4:24, 6:20, 6:23, 16:13, 28:5, 33:7
terms [3] - 11:8, 30:11, 32:21
test [4] - 5:14, 20:1, 31:20, 31:21
testified [3] - 11:6, 18:17, 29:23
testifies [1] - 22:11
testify [3] - 11:1, 11:13, 21:19
testifying [4] - 20:19, 21:15, 22:22, 27:6
testimony [8] - 11:19, 12:21, 15:1, 21:16, 29:3, 29:4, 30:13, 30:14
THAT [1] - 34:11
THE [72] - 2:3, 2:11, 3:4, 3:10, 3:13, 7:2, 7:7, 7:16, 8:3, 8:17, 9:12, 9:19, 10:3, 10:6, 10:13, 10:25, 12:2, 12:17, 13:1, 13:13, 13:25, 14:8, 14:16, 14:22, 15:2, 15:6, 15:8, 15:17, 15:19, 15:25, 16:2, 16:4, 16:6, 16:8, 16:11, 16:15, 16:18, 18:9, 19:11, 19:20, 19:23, 20:21, 20:25, 21:10, 21:14, 21:17, 22:17, 23:23, 24:1, 24:4, 24:11, 24:22, 25:8, 25:23, 28:12, 30:1, 31:20, 31:24, 32:2, 32:9, 32:12, 32:15, 32:17, 32:20, 34:1, 34:6, 34:11, 34:12, 34:13, 34:15, 34:16
therefore [3] - 9:14, 14:2, 15:11
thinking [3] - 3:23, 23:8, 28:11
THIS [1] - 34:14
thoroughness [1] - 19:3
thoughts [2] - 3:19, 28:5
three [5] - 5:3, 16:14, 18:17, 28:24, 32:10
together [1] - 18:6
took [4] - 8:25, 22:13, 29:1, 30:6
totally [1] - 25:3
traffic [2] - 12:5, 33:13
tragedy [1] - 26:2
train [1] - 31:8
training [2] - 5:10, 31:5
TRANSCRIPT [3] - 1:16, 34:12, 34:14
transcripts [1] - 11:4

treat [2] - 24:25, 26:12
triable [2] - 28:1, 33:16
trial [9] - 8:22, 9:1, 9:9, 10:25, 11:1, 19:6, 25:20, 26:21, 27:17
tried [1] - 17:6
trigger [1] - 26:9
true [3] - 12:19, 19:9, 22:8
TRUE [1] - 34:11
try [2] - 12:17, 20:5
trying [1] - 7:3
turn [4] - 19:25, 20:2, 24:6, 25:18
turned [1] - 20:3
turning [1] - 18:13
two [2] - 5:24, 14:1
type [8] - 7:11, 18:23, 20:17, 26:11, 29:14, 29:17, 30:25, 33:3
types [1] - 30:19

## U

U.S [1] - 1:23
under [12] - 4:21, 5:12, 5:15, 6:2, 14:20, 17:25, 18:25, 21:5, 30:20, 31:11, 34:7
underlying [5] - 5:12, 8:1, 8:21, 13:6, 25:2
undermined [1] - 22:9
understood [4] - 6:21, 9:9, 11:14, 28:10
undisclosed [3] - 24:4, 24:21, 32:4
UNITED [2] - 1:1, 34:16
UNIVERSITY [1] - 2:4
unreliable [1] - 13:18
up [10] - 3:25, 11:6, 12:20, 17:5, 17:13, 17:15, 25:19, 33:5, 33:17, 33:19
uphill [1] - 18:13
urge [1] - 33:7

## V

vanished [1] - 28:18
various [1] - 3:21
VELIZBAIRDMIRIAM@GMAIL.COM [1] - 1:25
versus [1] - 10:8
video [8] - 4:10, 4:13, 18:15, 28:5, 29:3, 29:19, 29:22, 29:24
videotape [1] - 29:14
view [6] - 4:2, 4:11, 5:3, 5:8, 5:10, 14:16
violation [1] - 5:14
violent [4] - 18:23, 19:7, 20:14, 24:17
voice [1] - 25:13
voiced [1] - 25:11
Vs [1] - 1:8

## W

WA [1] - 2:7
waded [1] - 6:20
walks [1] - 22:13
wants [1] - 29:13
WASHINGTON [1] - 2:5

**ways** [1] - 28:23
**week** [1] - 18:11
**weird** [1] - 29:11
**WESLEY** [1] - 1:3
**WEST** [1] - 1:24
**Westlaw** [1] - 10:4
**Whitley** [1] - 18:25
**whole** [3] - 12:19, 17:13, 19:7
**widespread** [1] - 27:19
**WILLIAM** [1] - 2:5
**WILLIAMS** [1] - 2:12
**Winn** [1] - 20:9
**WITH** [1] - 34:15
**witness** [13] - 7:20, 7:25, 11:2, 11:4, 17:18, 18:20, 19:17, 21:19, 24:25, 26:13, 31:19
**witness's** [2] - 20:11, 20:23
**WL** [1] - 10:7
**word** [1] - 11:7
**words** [3] - 8:6, 8:23, 9:8
**world** [1] - 17:7
**write** [2] - 19:24, 22:6
**writing** [2] - 7:14, 20:2
**wrote** [4] - 20:13, 21:22, 22:23, 25:6

## Y

**year** [1] - 22:23
**years** [3] - 8:12, 15:3, 33:23
**yesterday** [1] - 9:22
**Youngblood** [1] - 28:9