David B. Owens (SBN 275030)
david@loevy.com
Loevy & Loevy
333 S Grand Ave Suite 3310
Los Angeles, CA 90071
Telephone: (312) 243-5900

Elizabeth Wang*
Loevy & Loevy
2060 Broadway, Suite 280
Boulder, CO 80302
**Admitted Pro Hac Vice*

*Attorneys for Plaintiff Derrick Harris*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DERRICK HARRIS,<br>Plaintiff,<br>v.<br>CITY OF LOS ANGELES, et al.<br>Defendants. | Case No. 2:21-cv-07999-WLH-DMK<br><br>Honorable Wesley L. Hsu<br><br>Final Pretrial Conference:<br>November 20, 2026, 3:00 p.m.<br><br>Trial Date: December 14, 2026, 9:00 a.m.<br><br>**Plaintiff's Response in Opposition to Defendants' Motion In Limine No. 1** |

## INTRODUCTION

Defendants' *motion in limine* No. 1 seeks to exclude from this trial core theories the parties have been litigating on the fiction Defendants lacked notice of those theories because they were not an interrogatory response. This is nonsense.

Summary judgment was litigated in 2024. An interlocutory appeal was litigated in 2024 and 2025. Pretrial filings were submitted in 2024. That litigation involved Plaintiff's claims that Defendant Kim fabricated evidence, including

Kim's reporting about Harris's gang membership, tattoos, being named in a gang injunction, etc. Aside from the tattoos, which Kim strategically elected not to include, these same issues were part of Kim's interlocutory appeal to the Ninth Circuit. On remand, just a few months ago, the parties' June 2026 pretrial filings centered on, among other things, those same fabrication claims.

Now, for the first time in years of litigation, the Defendants argue that Plaintiff's fabrication claims were not adequately disclosed and should be excluded at trial. What changed? Why is this being raised now? There is an obvious answer: On the eve of the prior trial setting, Defendants untimely disclosed a video from an August 2012 traffic stop that should have been disclosed long before. Perhaps seeking to draw attention away from or in an attempt to "neutralize" this error, Defendants belatedly assert *Plaintiff* has committed the discovery violation, not *them*.

The record—and the truth of the matter—show the contentions are specious. Discovery addressed these theories directly, and yet Defendants never asked Plaintiff to update his interrogatory responses. They did not file a motion to compel but instead produced 30(b)(6) witnesses to testify about these topics. At summary judgment, Defendants did not point to the interrogatory responses or otherwise argue that the theories Plaintiff advanced were undisclosed. The issue was at least doubly forfeited. Plaintiff has not recently disclosed anything new, and so Defendants cannot show harm. The motion must be denied.

## RELEVANT BACKGROUND

Plaintiff was wrongfully convicted of a July 1, 2013, armed robbery he did not commit. *See* Dkt. 173 at 2. The robbery was committed by members of the Bounty Hunter gang. *Id.* at 2-3. Defendant Kim worked with LASD Deputy Dennis

Parker to identify Plaintiff as a suspect and obtain his indictment for the robbery and gang-related charges and enhancements. *Id.* at 4-6.

Before trial, Defendant Kim wrote a report claiming the Blackwell robbery was for the benefit of the gang, and purporting to link Harris to the crime as a gang member by claiming LAPD records (including Field Interview cards) showed his admission to gang membership; that Harris was named in a gang injunction; and that Harris's tattoos were not just gang related but for a subset of the gang that committed crimes just like the Blackwell robbery. Dkt. 115-3 at 745. The criminal prosecution of Harris included the robbery and directly-associated gang charges where Kim testified about an August 2, 2012 traffic stop of Harris by other LAPD officers and memorialized on an F.I. card. *See* Dkt. 115-3 at 572.

Harris testified that he was not a gang member and that the gang evidence—including about the tattoos and the 8/2012 traffic stop—were lies. *Id.* at 249-73.

The August 2, 2012 stop—and the LAPD records about it—were part of the criminal prosecution of Harris for the Blackwell Robbery. Harris was wrongfully convicted of all counts, Dkt. 173 at 7, and exonerated in 2020. *Id.* at 9.

This action commenced June 2021. Dkt. 1. Discovery ensued. Plaintiff sent a variety of requests that would have, and should have, led the City of Los Angeles to produce *all* of the information it had about the Blackwell robbery prosecution and, of course, Kim knew she had testified about the August 2, 2012, traffic stop during the criminal proceedings. *See* Dkt. 270-1. Defendants did not produce all such evidence.

Defendants sent contention interrogatories to Plaintiff, which were answered on August 9, 2022. Dkt. 268-1 at 16. There were multiple continuances of the pretrial deadlines, by stipulation of the parties, some of which noted disputes about

written discovery, if raised, would be subject to conferral. *See, e.g.*, Dkt. 68 at 2; Dkt. 83 at 2; Dkt. 95. At no point in the discovery did Defendants raise an issue with Plaintiff's answers to the contention interrogatories. Discovery ultimately closed January 16, 2024. Dkt. 96

In the meantime, discovery included Plaintiff's claim the gang evidence was fabricated. At deposition, Harris was asked about issues, including his tattoos and the gang injunction. Dkt. 115-3 at 151-64. Kim was deposed on October 13, 2023, and asked about issues related to fabricating gang evidence, including in her report and the traffic stops she testified about at the original trial. *See* Dkt. 115-3 at 14-17, 37-44. Plaintiff also sent a 30(b)(6) notice about whether LAPD had a practice of fabricating gang evidence—including via F.I. cards and the departure from Calgangs—and the City produced two separate designees to testify about the topic. *Id.* at 841-58.

After discovery closed, in March 2024, Kim and the City sought summary judgment. Dkt. 115-1. The evidence cited in the prior paragraph was submitted in *joint* summary judgment filings. Dkt. 115-3. In opposing the motion, *inter alia*, Plaintiff argued a reasonable jury could find Kim fabricated evidence in her report about Harris supposedly self-admitting gang membership, about Harris's tattoos, about Harris's arrest, and for claiming Harris was named in a gang injunction. Dkt. 115-1 at 29-31.

Defendants replied on April 3, 2024. Dkt. 121. Defendants did not assert the theories or evidence Plaintiff relied on was undisclosed, a surprise, or unknown. *Id.* Realistically, Defendants could not have credibly made any such argument, given that the jointly-submitted summary-judgment evidence jointly submitted (cited

above) included depositions pertaining directly to these topics. Defendants responded substantively. *Id.* at 3-4.

This Court held oral argument on summary judgment on May 20, 2024. Dkt. 127. There, Defendants did not mention or argue that Plaintiff's theories of liability or evidence pointed to at summary judgment were undisclosed. Dkt. 178.

This Court issued its ruling on September 24, 2024, Dkt. 173, discussing, among other things, the F.I. cards Kim testified about in the criminal proceedings (which included a card for August 2, 2012), Kim's report, the gang injunction, Harris's tattoos, and what happened during Harris's arrest. *Id.* at 6, 10-13, 21.

Kim filed a notice of interlocutory appeal. Dkt. 200. That appeal involved some, but not all, of the fabrication issues in the case. On remand, trial was set for July 6, 2026, and pretrial conference for June 26, 2026. Dkt. 203. The parties filed pretrial submissions, and Defendants did not file any motions *in limine* (other than seeking bifurcation). On June 26, 2026, the City disclosed a video of the August 2012 stop. The Court continued the trial on its own motion.

Trial is now set for December 14, 2026.

## DISCUSSION

### I. Defendants Forfeited Any Claim that Plaintiff's Interrogatory Responses Were Deficient By Not Filing a Motion to Compel

Defendants had beyond ample opportunity to ask Plaintiff to provide supplemental answers to the City's contention interrogatories. Doing so would have required conferral under this Court's local rules and, if impasse were reached, a motion to follow. Indeed, if a party deems another party's discovery responses incomplete or incorrect, it is required to move to compel. *See* FED. R. CIV. P. 37(a); *Atkinson v. Kofoed,* 2008 WL 508410, at *1 (E.D. Cal. Feb. 22, 2008) ("The

remedy when a party fails to respond to properly served, timely discovery requests and refuses to correct the omission through informal means is to file a motion to compel pursuant to Rule 37(a).”); *Hidden Empire Holdings, LLC v. Angelone*, 2025 WL 4231549, at *4 (C.D. Cal. Dec. 23, 2025) (“As to whether exclusion is warranted under Rule 37, the Court agrees with Plaintiffs that this argument was waived by Defendants’ failure to move to compel these documents before the deadline for hearing motions elapsed. (Opp. at 7). Local Rule 37 lays out an extensive process for bringing such a sanctions motion, including a meeting and conferring, filing a stipulation, and bringing a noticed motion. Much as the Court would refuse to entertain a motion for summary judgment at this stage, the Court will not allow Defendants to belatedly litigate a Rule 37 motion.”).

Indeed, “[b]ecause Defendants have utterly failed to comply with these procedural rules and have sat on their rights for over” four years, their motion should be denied. *Hidden Empire Holdings*, 2025 WL 4231549, at *4.

## II. Defendants Forfeited Any Claim Plaintiff’s Legal Theories Were Not Properly Disclosed at Summary Judgment

Even setting aside Defendants’ failure to address the interrogatories in discovery, Defendants forfeited any argument seeking to exclude Plaintiff’s fabrication of evidence theories that were actually litigated at summary judgment by not raising any issue at that time, which they could have done. *See, e.g.*, *Lawman v. City & Cnty. of San Francisco*, 159 F. Supp. 3d 1130, 1141 (N.D. Cal. 2016) (excluding theory not properly disclosed in an interrogatory).

Had the Defendants raised this issue in 2024, the parties could have litigated it then, including affording for potential additional discovery. *See* Fed. R. Civ. P. 56(d); *JGX, Inc. v. Handlery*, 2019 WL 9573761, at *2 (N.D. Cal. Nov. 25, 2019) (“The Court recognizes that Defendants have already filed a motion for summary

judgment, other deadlines have passed, and Defendants have based their litigation strategy on prior evidence. Defendants, however, may address the corrective advertising damages theory in their reply in support of their motion for summary judgment, Plaintiffs have agreed to facilitate discovery, and the Court will re-open discovery for limited purpose of allowing three interrogatories and three document requests on the new corrective advertising damages theory.”).

Defendants said nothing. Doing so was appropriate because whether Defendants fabricated gang evidence was thoroughly explored in discovery. Regardless, Defendants forfeited the opportunity to challenge Plaintiff’s disclosures during discovery, at least twice at summary judgment, in pretrial filings in 2024, and earlier this year.

### III. Defendants Should Be Estopped From Claiming Legal Theories that Were Actually Litigated Were Undisclosed

Another problem with Defendants’ untimely motion—filed two years after discovery closed, after the litigation of summary judgment, and after two prior trial settings—is that Defendants cannot point to anything new Plaintiff disclosed in 2026. Plaintiff has not disclosed any new evidence to which Rule 37 applies. The legal theories, and evidence supporting them, have been litigated for years.

In fact, the Defendants were successful in having the Ninth Circuit grant qualified immunity to Defendant Kim on the basis that the law was not clearly established. Dkt. 200.[1] Defendants should be estopped from now claiming that the theories they litigated (and partially succeeded in limiting) were undisclosed.

“Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one

---

[1] All of Kim’s conduct remains relevant to this trial. *See* Dkt. 274.

position, and then seeking a second advantage by taking an incompatible position." *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008) (cites omitted). "In determining whether to apply the doctrine, courts consider factors including (1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party." *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (cites omitted).

Here, Defendants' position that Plaintiff's fabrication theories about Kim's report and gang evidence were not properly disclosed is contradicted by the record they submitted at summary judgment, which includes discovery showing they knew about these claims. Defendants' arguments are further contradicted by their arguments at summary judgment—particularly in the reply brief, at the hearing on summary judgment, and before the Ninth Circuit—that Kim was entitled to judgment as a matter of law and/or qualified immunity on these theories. Defendants did not claim the theories were undisclosed but attacked the claims substantively. Indeed, at the summary judgment hearing, Defendants addressed these issues specifically, and invoked *Rubalcava v. City of San Jose*, 2024 WL 1336456 (N.D. Cal. Mar. 27, 2024), which necessarily entails they knew of, acknowledged, and challenged the exact theories they claim were undisclosed. Dkt. 178 at 6-14.

Second, Kim successfully persuaded the Court to address these issues. This Court's summary judgment ruling addressed these theories and Defendant Kim was successful at the Ninth Circuit in getting qualified immunity on the portion of

the fabrication claims she presented there. She cannot now turn around and claim she lacked notice of those same claims.

Third, to permit Defendants to claim the previously-litigated fabrication theories should be excluded would provide an absolutely unfair advantage at trial. That is especially the case because it is the Defendants—not Plaintiff—who have disclosed something new. It would be the epitome of injustice to permit the Defendants to use their own untimely disclosure to exclude evidence and theories that they were well aware of; that this Court addressed at summary judgment; and that were litigated on appeal. The result would be to completely gut Plaintiff's case and preclude Plaintiff from trying his core claims.

## IV. Defendants Cannot Show Prejudice Or Harm

Rule 37 does not apply here. Plaintiff has not disclosed any new legal theory or evidence that would come within the ambit of the Defendants' motion. The theories of liability were known to the City and disclosed in discovery, particularly given the topics were discussed at Kim's deposition and in the 30(b)(6) depositions of the City's designees.

Regardless, Defendants are not harmed within the meaning of Rule 37.

Donny Jobert was present when Harris was arrested; testified at the original criminal trial; is on Plaintiff's witness list, came up in depositions, and was included in summary judgment evidence. Dkt. 115-3 at 235-37, 240 (criminal trial); *id.* at 316-22, 337-38 (Coughlin deposition); *id.* at 366, 415 (Kim deposition); Dkt. 173 at 6-7. If Defendants wanted to depose Jobert, they could have but did not. Kim's arguments for qualified immunity related to Harris's arrest, which related to Jobert (the "bystander"), succeeded in front of the Ninth Circuit. Dkt. 200 at 3. Defendants' decision not to depose Jobert was strategic.

Moreover, Defendants knew in 2024, at summary judgment, exactly what evidence Plaintiff would point to in support of his fabrication claims. They have had more than two and a half years to address these issues. Even if the Court were to assume the complete fiction that there was a belated disclosure here, Defendants have had ample time to account for these theories. In short, even assuming *arguendo* Rule 37 applied, and the Court were to excuse the repeated forfeitures, and if this Court were to decline to apply judicial estoppel, Defendants cannot show any harm.

**CONCLUSION**

Defendants' motion *in limine* no. 1 must be denied.

Dated: November 5, 2026

LOEVY & LOEVY

By: ______________________
David B. Owens
*One of the Attorneys for Plaintiff Derrick Harris*

David B. Owens (SBN 275030)
david@loevy.com
Loevy & Loevy
333 S Grand Ave Suite 3310
Los Angeles, CA 90071
Telephone: (312) 243-5900

Elizabeth Wang*
2060 Broadway, Suite 280
Boulder, CO 80302
**Admitted Pro Hac Vice*

*Attorneys for Plaintiff Derrick Harris*

**Certificate of Compliance**

I, David B. Owens, an attorney, hereby certify that the foregoing contains does not exceed the 2,487 word limit set forth for motions *in limine* in this Court's standing order.

/s/ David B. Owens